IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

_____

**GREGORY J. LAMMERT and**
**JAMIE LAMMERT,**

        **Plaintiffs,**

**v.**

**AUTO-OWNERS (MUTUAL)**
**INSURANCE COMPANY,**

        **Defendant.**

**Civil Action No. _____**

**JURY DEMANDED**

_____

## CLASS ACTION COMPLAINT
_____

COME NOW the Plaintiffs, Gregory J. Lammert, and wife, Jamie Lammert, individually and on behalf of all others similarly situated, and state and allege the following for their Complaint against Auto-Owners (Mutual) Insurance Company:

### PARTIES, RESIDENCY, JURISDICTION AND VENUE

1. Plaintiffs Gregory J. Lammert and wife, Jamie Lammert (collectively "Plaintiffs"), are citizens and residents of Nashville, Davidson County, Tennessee. At all times relevant hereto, Plaintiffs owned and resided in the dwelling located at 3110 Bellwood Street, Nashville TN 37209 (the "Insured Premises").

2. Defendant Auto-Owners (Mutual) Insurance Company ("Auto-Owners") is organized under the laws of the State of Michigan and headquartered in Eaton County, Michigan. Auto-Owners is authorized to sell homeowner and property insurance policies in the State of Tennessee, and is engaged in the insurance business in the State of Tennessee.

3. As applicable to Plaintiffs, the events giving rise to the individual claims that are the subject of this action occurred in Davidson County, Tennessee. Auto-Owners has insurance agents and claims adjusters in Davidson County for the conduct of its usual and customary business, including the sale of homeowner and property insurance policies and the handling of claims made thereon.

4. On information and belief, this Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

5. This Court has personal jurisdiction over Auto-Owners because it has availed itself of the privilege of conducting business and issuing insurance contracts covering structures in the State of Tennessee

## FACTS

### A. The Property Insurance Policy and Casualty Loss

6. At all times relevant hereto, Plaintiffs were the insureds pursuant to an insurance contract whereby Auto-Owners agreed to insure the residential buildings located on the Insured Premises against property damage, bearing Policy No. 96-583-854-04 (the "Policy"). As relevant hereto, the term of the Policy was July 15, 2015 to July 15, 2016.

7. A copy of the Policy is attached hereto as Exhibit "1".

8. The Policy provided insurance coverage for accidental direct physical loss to the buildings located on the Insured Premises, except as specifically excluded or limited by the Policy.

9. This lawsuit only concerns property insurance coverage for buildings, and *not* personal contents, such as clothes and furniture.

10. Pursuant to the Policy, Plaintiffs paid Auto-Owners an annual premium in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

11. On or about May 10, 2016, Plaintiffs' residential buildings located on the Insured Premises suffered hail damage (the "Loss").

12. The Policy was in effect at the time of the Loss, and the Loss is compensable under the terms of the Policy. As it relates to the Loss, there is no applicable exclusion.

13. Plaintiffs promptly notified Auto-Owners of the Loss and made a claim against the Policy.

14. On or about August 15, 2016, Auto-Owners sent an adjuster, Amanda Carroll, to inspect and adjust the Loss.

15. After its inspection, Auto-Owners determined that the Loss was covered by the terms of the Policy. Auto-Owners informed Plaintiffs that their loss "will be settled on an actual cash value basis and your policy may contain a replacement cost provision. If it contains such a provision, full cost of replacement can be considered if the property is actually replaced. You have the right to make further claim under this provision within 180 days after the loss."

16. Auto-Owners calculated its actual cash value ("ACV") payment obligation to Plaintiffs by first estimating the cost to repair or replace the damage with new materials (replacement cost value, or "RCV"), then subtracted depreciation.

17. The Policy defines ACV as "the cost to replace damaged property with new property of similar quality and features reduced by the amount of depreciation applicable to the damaged property immediately prior to the loss."

3

18. As such, for purposes of calculating "actual cash value," depreciation is limited to that "applicable to the damaged property."

### B. Auto-Owners Calculation of ACV and ACV Payment

19. In adjusting Plaintiffs' claim, Auto-Owners affirmatively and unilaterally chose to use a "replacement cost less depreciation" methodology to calculate the loss and make its ACV payment to the Plaintiffs.

20. Auto-Owners did not calculate any portion of Plaintiffs' casualty loss by reference to or analysis of the alleged increases or decreases in the market value of Plaintiffs' property, or the market value of any portion of Plaintiffs' property. Auto-Owners did not conduct an appraisal of the market value of any portion of Plaintiffs' property.

21. Auto-Owners has waived, and is estopped from asserting, any right to contend that ACV should have been calculated under any methodology other than the methodology actually used by Auto-Owners, specifically including any market value methodology.

22. Auto-Owners used commercially-available computer software to make its RCV, depreciation and ACV calculations.

23. Auto-Owners calculated the RCV of Plaintiffs' damaged property at $12,146.55.

24. Auto-Owners calculated the depreciation for Plaintiffs' damaged property in the amount of $2,160.19.

25. After subtraction of the depreciation from the RCV, and, also subtraction of what Auto-Owners contended was the Policy's applicable deductibles, Auto-Owners paid Plaintiffs an ACV payment of $8,986.36.

26. Auto-Owners sent Plaintiffs an estimate reflecting its ACV calculations. A copy of the estimate is attached hereto as Exhibit "2".

4

27. Plaintiffs were underpaid on their ACV claim as described below.

### C. Auto-Owners' Practice of Depreciating Labor

28. In this pleading, whenever reference is made to depreciating "labor," "labor" means intangible non-materials, specifically including both the labor costs and the laborers' equipment costs necessary to restore Plaintiffs' property to its condition immediately prior to the loss, as well as "removal" costs to remove damaged property, under the software program described below.

29. The ACV payment Auto-Owners made to Plaintiffs depreciated the cost of both materials and labor required to repair or replace Plaintiffs' property, even though labor does not depreciate in value over time. Auto-Owners depreciated costs associated with labor throughout its ACV calculations. Auto-Owners also depreciated labor costs for other work necessary to repair and replace Plaintiffs' property.

30. Auto-Owners' depreciation of labor costs associated with the repair or replacement of Plaintiffs' property resulted in Plaintiffs receiving payment for the loss in an amount less than Plaintiffs were entitled to receive under the Policy. Auto-Owners breached its obligations under the Policy by improperly depreciating the cost of labor.

31. Plaintiffs themselves cannot determine the precise amount of labor that has been depreciated based upon the written estimate provided.

32. Plaintiffs concede that finished goods and construction materials can diminish in value over time due to use, wear, obsolescence, and age. Therefore, finished goods and construction materials depreciate. In contrast, both removal labor and installation labor are not susceptible to aging or wear. Their value does not diminish over time. Conceptually, practically,

5

and under common understanding, depreciation cannot be applied to labor to remove damaged property or repair damaged property in the context of indemnification insurance.

33. Labor, by its nature, does not depreciate, and an insurer therefore may not depreciate labor. For example, materials used in the repair or replacement of a roof (roofing shingles) diminish in value over time due to the wear that age and use inflict on them. In contrast, labor is not susceptible to aging or wear, it does not lose value over time, and there is no depreciable life of labor. Labor's value does not diminish over time; only the materials depreciate.

34. Auto-Owners' practice of depreciating labor costs is inconsistent with the universally accepted premise that the fundamental purpose of property insurance is to provide indemnity to policyholders. To indemnify means to put the insured back in the position he or she enjoyed before the loss—no better and no worse. A policy, like Auto-Owners' policy, that provides for payment of the ACV of a covered loss is an indemnity contract because the purpose of an ACV payment is to make the insured whole after the loss that occurred.

35. To provide an example of the dispute at hand concerning depreciation of labor when calculating actual cash value, if an insured's 15 year-old roof was damaged during a hail storm necessitating replacement of the shingles, the law, common sense, and Auto-Owners insurance policies require that, after the damage, the insured would be entitled to have on his house 15 year old shingles, or their value in money. The insured should not bear the cost of installing those shingles, because that would deprive him of that for which he contracted – being made whole as if the damage had not occurred.

36. While an insurer may lawfully depreciate material costs when calculating the amount of an ACV payment owed to an insured, it may not lawfully depreciate repair labor.

6

Auto-Owners' failure to pay the full cost of the labor necessary to return Plaintiffs back to their pre-loss condition left Plaintiffs under-indemnified and underpaid for the Loss.

37. Auto-Owners materially breached its duty to indemnify Plaintiffs by depreciating labor costs associated with repairing or replacing Plaintiffs' property in its ACV payment, thereby paying Plaintiffs less than they were entitled to receive under the terms of the Policy.

### D. The Tennessee Department of Insurance's Response to The 2008 NAIC Survey

38. Auto-Owners has been aware of ongoing disputes between members of the insurance industry, on the one hand, and state insurance regulators and policyholders, on the other hand, over the practice of depreciating not only finished goods, construction materials and physical property due to wear, tear, condition and obsolescence, but also the new practice of depreciating non-tangible items, such as labor, when calculating the ACV of damaged property.

39. As it relates to this dispute within the State of Tennessee, in 2008, the National Association of Insurance Commissioners ("NAIC survey") published a copyrighted survey of state insurance departments and their respective positions on the depreciation of labor. The Tennessee Department of Insurance ("TDOI") formally responded to the survey.

40. On information and belief, at all relevant times hereto, Auto-Owners knew of the existence of the NAIC survey and the TDOI's responses to the same.

41. First, the NAIC survey asked "Does your state allow the depreciation of labor under an actual cash value (ACV) loss settlement provision for property?" The TDOI stated in response: "**It is generally the belief that labor is not depreciable**, but the Department has no written position on the matter. We believe there is some case law supporting this aspect. To our knowledge, this is not a problem here." (emphasis added)

7

42. Second, the survey also asked "Is depreciation for labor allowed on an ACV roof if it is totally replaced?" The TDOI stated in response: "**We do not believe insurers are depreciating labor unless their provision calls for it**. At least one insurer has a policy provision addressing this issue." (emphasis added).

43. Auto-Owners was aware that the TDOI took a position against the depreciation of labor based upon the NAIC 2008 survey, and that the TDOI believed that insurers were not engaging in the practice within the State of Tennessee.

### E. Concealment

44. At all times relevant hereto, Auto-Owners was under an affirmative duty to disclose the manner in which it calculates ACV payments to policyholders.

45. In addition, when providing estimates to Plaintiffs and similarly situated policyholders, Auto-Owners was under a duty to be truthful.

46. After issuance of the NAIC survey, on information and belief, Auto-Owners knew that the TDOI's understandings concerning the labor depreciation practices within the State of Tennessee were incorrect, as Auto-Owners knew that Auto-Owners itself was depreciating labor for Tennessee policyholders' ACV claims contrary to the TDOI's statements in the survey.

47. On information and belief, Auto-Owners never notified the TDOI that its understandings as set forth in the NAIC survey were incorrect, and that Auto-Owners was depreciating labor within the State of Tennessee.

48. To conceal its practice of depreciating labor from policyholders, Auto-Owners did not separate the amounts it depreciated for labor charges from amounts it depreciated for materials in the estimates provided to insureds with their ACV payments.

8

Case 3:17-cv-00819   Document 1   Filed 05/09/17   Page 8 of 19 PageID #: 8

49. The commercial estimating software used by Auto-Owners easily permits further separation of the line item charges so policyholders can determine whether labor was being depreciated. Auto-Owners did its best to make it impossible for an ordinary consumer to know that Auto-Owners depreciated labor, and not merely materials, when reviewing estimates provided to policyholders.

50. To further conceal its practice of depreciating labor in the estimates, for some line items that only contain obvious labor costs standing alone, such as scaffolding labor charges, Auto-Owners did not depreciate labor —all to help avoid detection of its depreciation of labor in other line items.

51. Auto-Owners was in a superior position over policyholders to know that it was depreciating labor through its estimating software. Auto-Owners controlled the settings for the software, which expressly permit an adjuster to properly limit depreciation to materials only.

52. Auto-Owners fraudulently concealed its breaches of contract from Plaintiffs and similarly situated policyholders.

53. The facts misrepresented, concealed, or otherwise not disclosed to Plaintiffs and similarly situated policyholders were material facts that a reasonable person would have considered important in deciding whether to purchase insurance and accept ACV payments from Auto-Owners.

54. The concealment of information in estimates was performed by Auto-Owners with the intent that policyholders, including Plaintiffs, believe that only materials were being depreciated.

## AMOUNT IN CONTROVERSY

55. Upon information and belief, the amount in controversy with respect to the proposed class exceeds $5,000,000, exclusive of interest and costs.

## CLASS ACTION ALLEGATIONS

56. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this lawsuit as a class action on behalf of themselves and on behalf of all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. Only to the extent it is a requirement under applicable law, the class is ascertainable.

57. The proposed class that Plaintiffs seek to represent is defined as follows:

> All persons and legal entities insured under an Auto-Owners homeowner or property policy who received "actual cash value" payments from Auto-Owners for direct physical loss to a dwelling or other structure located in Tennessee in which the cost of repair or replacement labor was depreciated.

58. Plaintiffs reserve the right to amend the definition of the proposed class. The following persons are expressly excluded from the Class: (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; and (3) the Court to which this case is assigned and its staff.

59. Members of the putative class as defined all have Article III standing as all such persons and entities, at least initially, received lower claim payments than permitted under the policy. Certain amounts initially withheld as depreciated labor may be later repaid to policyholders upon further adjustment of the claim. However, policyholders who have been subsequently repaid for initially withheld labor depreciation still have incurred damages, at the

least, in the form of the lost "time value" of money during the period of withholding, *i.e.*, interest.

60. The proposed class definition, when referencing labor, includes all non-tangible depreciation of labor, including but not limited to, labor equipment or removal labor.

61. The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiffs reasonably believe that thousands of people geographically dispersed across Tennessee have been damaged by Auto-Owners' actions. The names and addresses of the members of the proposed class are readily identifiable through records maintained by Auto-Owners or from information readily available to Auto-Owners.

62. The relatively small amounts of damage suffered by most members of the proposed class make filing separate lawsuits by individual members economically impracticable.

63. Auto-Owners has acted on grounds generally applicable to the proposed class in that Auto-Owners has routinely depreciated labor costs in its adjustment of property damage claims under its policies of insurance. It is reasonable to expect that Auto-Owners will continue to depreciate the cost of labor to reduce the amount it pays to its insureds under these policies absent a decision by the Court.

64. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

> A. Whether Auto-Owners' policy language allows Auto-Owners to depreciate labor costs in its calculation of ACV payments;
>
> B. Whether Auto-Owners' policy language is ambiguous concerning the depreciation of labor costs in calculating ACV payments, and, if so, how Auto-Owners' insurance policies should be interpreted;

C. Whether Auto-Owners' depreciation of labor costs in its calculation of ACV payments breaches the insurance policies;

D. Whether Auto-Owners has a custom and practice of depreciating labor costs in its calculation of ACV payments;

E. Whether Plaintiffs and members of the proposed class have been damaged as a result of Auto-Owners' depreciation of labor costs in its calculation of ACV payments;

F. Whether Plaintiffs and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Uniform Declaratory Judgment Act;

G. Whether Plaintiffs and members of the proposed class are entitled to equitable relief in the form of specific performance, unjust enrichment, declaratory relief or restitutionary damages; and

H. Whether Plaintiffs and members of the proposed class are entitled to punitive damages.

65. Plaintiffs' claims are typical of the claims of all proposed class members, as they are all similarly affected by Auto-Owners' custom and practice concerning labor depreciation. Further, Plaintiffs' claims are typical of the claims of all proposed class members because their claims arise from the same practices and course of conduct that give rise to the claims of the class members and are based on the same factual and legal theories. Plaintiffs are not different in any material respect from any other member of the proposed class.

66. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiffs' interests do not conflict with the interests of the proposed class they seek to represent. Plaintiffs have retained counsel who are competent and experienced in class action and insurance litigation. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

67. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed class members in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most members of the proposed class, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if proposed class members had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

68. In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiffs and members of the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

69. Questions of law or fact common to Plaintiffs and the proposed class members, including those identified above, predominate over questions affecting only individual members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individuals would require. Further, the monetary amounts due to many individual proposed class members are likely to be relatively small, and the burden and expense of individual litigation

13
Case 3:17-cv-00819 Document 1 Filed 05/09/17 Page 13 of 19 PageID #: 13

would make it difficult or impossible for individual proposed class members to seek and obtain relief. On the other hand, a class action will serve important public interests by permitting consumers harmed by Auto-Owners' unlawful practices to effectively pursue recovery of the sums owed to them, and by deterring further unlawful conduct. The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

70. Class certification is further warranted because Auto-Owners has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## COUNT I
## BREACH OF CONTRACT

71. Plaintiffs restate and incorporate by reference all preceding allegations.

72. Auto-Owners entered into policies of insurance with Plaintiffs and members of the proposed class. These insurance policies govern the relationship between Auto-Owners, Plaintiffs and members of the proposed class, as well as the manner in which claims for covered losses are handled.

73. The policies of insurance between Auto-Owners and Plaintiffs and the other proposed class members are binding contracts under Tennessee law, supported by valid consideration in the form of premium payments in exchange for insurance coverage.

74. Auto-Owners drafted the insurance policies at issue, which are essentially identical in all respects material to this litigation.

75. In order to receive ACV claim payments, Plaintiffs complied with all material provisions and performed all of their respective duties with regard to their insurance policy.

76. The policies of insurance Auto-Owners issued to Plaintiffs and members of the proposed class state that, in the event of a partial loss, Auto-Owners may fulfill its initial

14

contractual obligation to an insured party by paying the ACV of the loss. At all times relevant hereto, Auto-Owners' custom and practice has been, and is, to make such payments based upon Auto-Owners' calculation of the ACV for the partial loss, less any applicable deductible.

77. Auto-Owners breached its contractual duty to pay Plaintiffs and members of the proposed class the ACV of their claims by unlawfully depreciating labor costs.

78. Auto-Owners' actions in breaching its contractual obligations to Plaintiffs and members of the proposed class benefitted and continue to benefit Auto-Owners. Likewise, Auto-Owners' actions damaged and continue to damage Plaintiffs and members of the proposed class.

79. Auto-Owners' actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiffs and members of the proposed class.

80. In light of the foregoing, Plaintiffs and members of the proposed class are entitled to recover damages sufficient to make them whole for all amounts Auto-Owners unlawfully withheld from their ACV payments as labor cost depreciation.

81. Plaintiffs and members of the proposed class seek any and all relief as may be permitted under Tennessee law to remedy the ongoing breaches of contract.

82. Auto-Owners' breaches of contract were intentional, fraudulent, malicious, and/or reckless, therefore justifying an award of punitive damages. Specifically, Auto-Owners intentionally, fraudulently, maliciously, and/or recklessly: (1) failed to effectuate a prompt and fair settlement of Plaintiffs' and members of the proposed class' claims when liability was clear; (2) unjustly refused to fully and fairly pay Plaintiffs and members of the proposed class the ACV amounts to which they were entitled for its own financial preservation with no reasonable or justifiable basis; (3) failed to fully inform Plaintiffs of their rights and obligations under the

Policy; (4) engaged in acts and practices toward Plaintiffs and members of the proposed class that amount to acts of baseness, vileness and/or depravity that are contrary to the fiduciary duties owed to them; (5) intentionally concealed from Plaintiffs and members of the proposed class its practice of depreciating labor costs; (6) failed to properly and fully investigate and adjust Plaintiffs and other proposed class members' claims and to pay such claims fully; (7) failed to pay all amounts due and owing under the subject insurance policies with no reasonable or justifiable basis; (8) misrepresented pertinent facts relating to the insurance coverage at issue; and (9) denied full and appropriate ACV payment of Plaintiffs' and the proposed class members' claims with no honest disagreement or innocent mistake concerning the validity or the nature and amount of Plaintiffs' claim. Auto-Owners knew, or reasonably should have known, that Plaintiffs and the proposed class members were justifiably relying on the money and benefits due them under the terms of the subject insurance policies. Nevertheless, acting with conscious disregard for the rights of Plaintiffs and the proposed class members and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship, Auto-Owners consciously refused to fully compensate Plaintiffs and the proposed class members for their losses, and withheld monies and benefits rightfully due Plaintiffs and the proposed class members. In so acting, Auto-Owners intended to and did injure Plaintiffs and the proposed class members in order to protect its own financial interests, and should be punished. Plaintiffs and the proposed class members seek, and are entitled to, punitive damages.

## COUNT II
## DECLARATORY JUDGMENT AND RELIEF

83. Plaintiffs restate and incorporate by reference all preceding allegations.

84. This Court is empowered by the Declaratory Judgment Act as codified at 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to declare the rights and legal relations of parties regardless

of whether or not further relief is or could be claimed.

85. A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

86. Plaintiff and members of the proposed class have complied with all relevant conditions precedent in their contracts.

87. Plaintiffs seek, personally and on behalf of the proposed class, a declaration that Auto-Owners' property insurance contracts prohibit the deduction of depreciated labor costs when adjusting partial losses under the methodology employed here.

88. Plaintiffs further seek, personally and on behalf of the proposed class, any and all equitable relief available under the law that the Court deems necessary and proper to the administration of justice, including, but not limited to, identifying and locating policyholders, and notifying the same of the circumstances complained of and the restoration of their rights and remediation of their losses, and preclusion by Auto-Owners in engaging in the conduct described herein, as may be permitted by law.

89. Plaintiffs and members of the proposed class have suffered injuries.

## JURY DEMAND

90. Plaintiffs hereby demand a trial by jury on their claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Gregory J. Lammert and Jamie Lammert, individually and on behalf of all others similarly situated, respectfully request that this Court:

1. Enter an order certifying this action as a class action, appointing Plaintiffs Gregory J. Lammert and Jamie Lammert as the representatives of the class, and appointing

Larson • King, LLP, Gilbert Russell McWherter Scott Bobbitt, PLC, and Don Barrett, P.A. as counsel for the class;

2. Enter a declaratory judgment, declaring that Auto-Owners' depreciation of labor costs is contrary to and breaches the insurance policies issued to Plaintiffs and members of the class;

3. Enter a preliminary and permanent injunction and equitable relief against Auto-Owners and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the policies, practices, customs, and usages complained of herein;

4. Enter an order that Auto-Owners specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of its past and present practices complained of herein;

5. Award compensatory damages for all sums depreciated as labor costs under the policy, plus prejudgment interest on all such sums, to Plaintiffs and members of the class;

6. Award punitive damages in an amount equal to nine (9) times Plaintiffs' and proposed class members' actual damages, or such other amount as may be allowed by law;

7. Award costs, expenses, and disbursements incurred herein by Plaintiffs and members of the class; and

8. Grant such further and additional relief as the Court deems necessary and proper.

GILBERT RUSSELL MCWHERTER
SCOTT BOBBITT PLC

By: /s/ J. Brandon McWherter
J. BRANDON McWHERTER - #21600
341 Cool Springs Blvd, Suite 230
Franklin, TN 37067
(615) 354-1144
bmcwherter@gilbertfirm.com

and

T. JOSEPH SNODGRASS (*pro hac vice to be filed*)
LARSON • KING, LLP
30 East Seventh St., Suite 2800
St. Paul, MN 55101
(651) 312-6500
jsnodgrass@larsonking.com

and

DAVID McMULLAN, JR. (*pro hac vice to be filed*)
DON BARRETT (*pro hac vice to be filed*)
DON BARRETT, P.A.
404 Court Square
Lexington, Mississippi 39095
(662) 834-2488
dmcmullan@barrettlawgroup.com

*Attorneys for Plaintiffs and
Putative Class Representatives*