IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| GREGORY J. LAMMERT, JAMIE LAMMERT, LARRY REASONS, and SUSAN REASONS, | Civil Action No. 3-17-cv-00819 |
| | Waverly D. Crenshaw, Jr. |
| | Barbara D. Holmes |
| Plaintiffs, | |
| | JURY DEMANDED |
| v. | |
| AUTO-OWNERS (MUTUAL) INSURANCE COMPANY, | |
| Defendant. | |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF "ISSUE" CLASS CERTIFICATION**

Auto-Owners has raised several challenges to issue class certification (Dkt. 46) and the sequencing of proceedings (Dkt. 32). However, most of the arguments are foreclosed by *In re Whirlpool Corporation,* 722 F.3d 838 (6th Cir. 2013). All of Auto-Owners' remaining arguments are also addressed herein.

A. **THE LIKELIHOOD OF TENNESSEE SUPREME COURT CERTIFICATION WILL BE INCREASED IF CLASS CERTIFICATION IS FIRST ADDRESSED**

In response to Plaintiffs' sequencing motion (Dkt. 32), Auto-Owners argues that the Court should first address contract interpretation before analyzing the appropriateness of issue class certification. Dkt. 43 at 14-15. The most recent briefing now makes clear that both Plaintiffs and Auto-Owners believe question certification to the Tennessee Supreme Court is appropriate. Dkt. 46; Dkt. 43 at 4, 34 ("[T]he question of whether Tennessee law prohibits labor-cost depreciation … *should be certified to the Tennessee Supreme Court so that it may be answered most efficiently*." (emphasis added)).[1] Tennessee Supreme Court Rule 23 allows certification of: (1) questions of law; (2) that are determinative of the cause;[2] and (3) to which there is no controlling precedent. Tenn. S. Ct. R. 23, § 1; *Renteria-Villegas v. Metro. Gov't of Nashville & Davidson County*, 382 S.W.3d 318, 320 (Tenn. 2012). The Tennessee Supreme Court does not answer "questions of fact or controversies as a whole." *Id.*; *Seals v. H&F, Inc.*, 301 S.W.3d 237, 241 (Tenn. 2010).

Tennessee Supreme Court certification will only be exercised "where *an important question of state law has arisen*." *Cincinnati Ins. Co. v. Grand Pointe, LLC*, 501 F. Supp. 2d 1145, 1167 (E.D. Tenn. 2007) (citations omitted; emphasis added). For this reason, the court

---

[1] Auto-Owners correctly noted that several federal courts have followed this procedure in labor depreciation cases. *Id.* at 33 n.43.

[2] A question of law is "determinative of the cause" if it is determinative of a claim *or* issue within the case; Rule 23 does not require the question of law to be case-dispositive. *See Becker v. Ford Motor Co.*, No. 13-276, 2013 WL 6046080, at *2 (E.D. Tenn. Nov. 13, 2013).

1

frequently exercises its broad discretion to reject certified questions from federal courts. Tenn. S. Ct. R. 23, § 1; *Seals*, 301 S.W.3d at 241; *see also Cincinnati Ins.*, 501 F. Supp. 2d at 1167 n.6 ("[I]t is by no means certain that the Tennessee Supreme Court will accept this question assuming *arguendo* the Court decided to exercise its discretion to certify the question.").

As noted by Auto-Owners, the Arkansas, Minnesota, Nebraska, and Oklahoma supreme courts have considered question certification in cases involving withheld labor depreciation. However, both the Kentucky Supreme Court and the Ohio Supreme Court have recently rejected certified labor depreciation property insurance questions in cases where federal courts had not yet addressed class certification, and the lawsuit only involved one claimant. *See* Order Denying Request for Certification of the Law, *In re: Dr. Gary Brown et al. v. Travelers Cas. Ins. Co. of Am. et al.*, No. 2015-SC-000588-CL (Ky. Dec. 17, 2017); Entry, *Cranfield v. State Farm Fire & Cas. Co.*, No. 2016-1840 (Ohio Feb. 2017).[3]

It is not difficult to envision the reticence of a supreme court to take up legal question certification where the lawsuit involves only one or two individuals versus a broader group of Tennesseans. *See, e.g., Renteria-Villegas v. Metro. Gov't of Nashville & Davidson County*, No. 11-0218, 2011 WL 4048523, at *12 (M.D. Tenn. Sept. 12, 2011) (certifying issues concerning lawful immigration enforcement duties because it would resolve "question of whether many local citizens who enter the jail system are subjected to unlawful investigations").

If this lawsuit does not warrant issue class certification, the Tennessee Supreme Court may conclude that the outcome of two individual property claims involving only a few thousand dollars is not worth its time and attention. Accordingly, certification of a Federal Rule 23(c)(4) issue class—especially to resolve the identical issues to be certified to the Tennessee Supreme

---

[3] All cited unpublished decisions are attached as Exhibit A to the Declaration of T. Joseph Snodgrass, filed concurrently herewith.

Court—would undoubtedly heighten the likelihood that the Tennessee Supreme Court accepts review. As such, it should be addressed first.

**B.     AUTO-OWNERS' "AS A WHOLE" CLASS CERTIFICATION ARGUMENT HAS BEEN REJECTECTED BY THE SIXTH CIRCUIT**

Based solely upon trial court decisions predating *In re Whirlpool Corporation,* 722 F.3d 838, 853 (6th Cir. 2013), Auto-Owners' opposition to "issue" class certification rests upon one overarching legal argument—that is, the predominance standard must be met as to the lawsuit "as a whole" and not simply as to the narrow contract interpretation issues sought to be certified here. Dkt. 43 at 8. This argument is then used throughout Auto-Owners' brief to argue that factual disputes will render affirmative defense and damages issues inappropriate for class certification under the predominance standard. Dkt. 43 at 7 ("[I]ndividualized questions necessary to decide … damages here cannot be answered through common evidence."); *Id*. at 8-9 ("[D]amages … can be determined only through individualized proof."); *Id*. at 22-25.

The Sixth Circuit does not follow this approach. Paul D. Rheingold, LITIGATING MASS TORT CASES § 2:41 (Oct. 2017). In *In re Whirlpool*, the Sixth Circuit rejected Auto-Owners' "as a whole" argument, finding predominance need be met only as to certified liability questions. The Court certified a class even though all damages-related issues could *not* be certified under Rule 23(b)(3) and the Supreme Court's decision in *Comcast Corporation v. Behrend*, 569 U.S. 27 (2013). *In re Whirlpool*, 722 F.3d at 859-61.

The Sixth Circuit started from "the premise that there need be only one common question to certify a class." *Id*. at 853. The Court held that common proof needs to be applicable *only* to the certified legal issue, and not to the entirety of each element of each claim, much less common proof for various affirmative defenses. *Id*. ("A plaintiff class need *not* prove that each element of a claim can be established by classwide proof.").

3

Here, in fact, there is absolutely no "common proof" dispute. Plaintiffs seek only to certify a class to interpret two coverage forms, and the coverage forms are in the court record. The only issue is whether the legal issues can be said to "predominate" in importance as compared to other legal and factual issues in the case. Clearly, the contract interpretation issue predominates over any purported individualized issues pertaining to the named representatives, as Auto-Owners has moved to dismiss all of the named representatives' claims based upon its interpretation of these two coverage forms. And, based upon the parties' joint request for question certification to the Tennessee Supreme Court, these contract interpretation issues plainly predominate on behalf of the larger putative class.

## C.  THE LEGAL ISSUES PRESENTED ARE QUESTIONS OF LAW, NOT FACT

Citing *Wilcox v. State Farm Fire and Casualty Company*, 874 N.W.2d 780 (Minn. 2016) and its progeny, Auto-Owners spends substantial time arguing that whether labor depreciation can be withheld might be a question for an appraiser not the court. However, Auto-Owners failed to address Tennessee law on point.

Unlike this case, *Wilcox* dealt with an insurance policy where ACV was not defined and the word "depreciation" was not used in the policy. The Court held that whether labor depreciation is permissible "is ultimately a question of fact, not law." *Id*. at 785. For the reasons set forth in Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss, Tennessee does *not* follow the Minnesota approach when determining what questions are decided by a judge versus those that should be decided by an appraisal panel. Dkt. 45 at 5-7. Plaintiffs' arguments concerning this issue are incorporated herein by reference.

4

### D. NUMEROSITY PLAINLY EXISTS

Parties and their counsel have an obligation not to manufacture factual disputes solely for purposes of obstructing the litigation of legitimate claims. *See generally* Fed. R. Civ. P. 11; *see also, e.g., Eberly v. Manning*, 258 F. App'x 224, 228 (10th Cir. 2007) (approving sanctions against counsel for "sham disputes" manufactured by party for purposes of obfuscating core issue, which needlessly increased costs to opponents who had to respond to said disputes and "unnecessarily prolonged the life of this case"); *Wilson-Simmons v. Lake County Sheriff's Dep't*, 207 F.3d 818, 824 (6th Cir. 2000) (holding that "when an attorney knows *or reasonably should know* that … his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims, a trial court does not err by assessing fees attributable to such against the attorney" (emphasis in original; internal quotation and citations omitted)). Yet, Auto-Owners disputes Plaintiffs' evidentiary submission concerning numerosity—*i.e.,* Tennessee market share, premium loss ratio and average size of claim data—without offering *any* opposing evidence. This omission is telling.

"In ruling on a class action a judge may consider reasonable inferences drawn from facts before him at that stage of the proceedings." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th Cir. 2012) (citations omitted); *accord Ingram v. Corp. Receivables*, No. 02-6608, 2003 WL 21982152, at *2 (N.D. Ill. Aug. 19, 2003) (ruling that the plaintiff can offer "good faith estimates of class size ... and the court may use 'common sense assumptions' to determine the validity of those estimates[,]" including assumptions based on the size of a company and the nature of its business). The amount of direct premiums written and corresponding loss ratios, just for homeowners' coverage, just for 2015, and just for Tennessee, demonstrate that Auto-Owners paid approximately $12.273M in property claims. Dkt. 28-14 at 3. Because the national average

5

for almost all categories of property casualty is far less than $10,000 (Dkt. 28-15 at 2), it can be reasonably expected that Auto-Owners adjusts well over 1,000 Tennessee property claims under its homeowners' coverage form each calendar year. It borders on the absurd to believe, as suggested by Auto-Owners (Dkt. 43 at 27-28), that Auto-Owners' personal lines claims are more than 1,000 fold of the national average, such that less than 40 policyholders make up the tens of millions of dollars in property claims at issue during the class period, just in the homeowners' line of insurance.

Moreover, absent numerosity, there is no possible federal subject-matter jurisdiction. As a predicate for subject-matter jurisdiction, Plaintiffs alleged the existence of thousands of putative class members. Dkt. 24 at ¶¶ 5, 94-95. Plaintiffs further alleged in the pleadings, "on information and belief," that the $5M amount in controversy threshold under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(6), was satisfied. Dkt. 24 at ¶ 5.

Auto-Owners' opposition brief, challenging numerosity[4] (which generally only requires 40 members), would result in an aggregate value far less than $400,000. Generally, once any material factual allegations supporting subject-matter jurisdiction are challenged by a litigant (or the district court), the district court must stop and analyze whether subject-matter jurisdiction exists. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006) (explaining that, "if material factual allegations are contested," jurisdictional facts must be proved by a preponderance of the evidence by some party). If Auto-Owners does not concede numerosity, then, in the absence of some proof of the aggregate value of the claims, federal subject-matter jurisdiction is lacking.

---

[4] Plaintiffs assumed numerosity would not be disputed because, in the Initial Case Management Order, Auto-Owners' attorneys agreed that the Court has subject-matter jurisdiction under 28 U.S.C. § 1332(d). However, parties "are not free simply to agree that the jurisdictional amount requirement has been satisfied, since parties cannot by stipulation or any other mechanism confer subject matter jurisdictions on the federal courts …" 14AA Wright and Miller § 3702.

6

Case 3:17-cv-00819   Document 50   Filed 11/06/17   Page 7 of 13 PageID #: 1685

### E. ALLEGED DIFFERENCES IN POLICYHOLDER FORMS

Auto-Owners briefly argues, without citation to any evidence, that potential differences in unidentified Auto-Owners' coverage forms make certification improper. This demonstrably improper argument, again, seeks to create fact issues where none exist. If Auto-Owners truly had any coverage form or endorsement that materially differentiated from the named representatives' coverage forms for purposes of the labor depreciation analysis, these forms would be before the Court.

Auto-Owners, a personal lines carrier, has used the same dwelling and homeowners property "coverage forms"[5] since the late 1990s. Dkt. 24-1 at 12 (dwelling coverage form dated "7-97"); Dkt. 24-3 (HO coverage form dated "2-96"); 11/6/2017 Buckley Dec. at ¶4. The public record[6] demonstrates that the endorsements Auto-Owners has filed and used in Tennessee for dwelling and homeowners' coverage forms do not change any of the proposed certified questions for any particular group of policyholder, because the forms actually used by Auto-Owners do not change any applicable definitions within the coverage forms nor address the issue of labor depreciation. 11/6/2017 Buckley Dec. at ¶5. In addition, to further eliminate any concern over this issue, Plaintiffs will narrow the proposed class definition in their motion to be inclusive of only putative class members issued Auto-Owners' homeowners' and dwelling coverage forms.

### F. AUTO-OWNERS' UNDERPAYMENT ARGUMENTS

Despite the fact that the class is defined *only* to include policyholders who received an ACV payment that was subject to labor depreciation withholding, Auto-Owners makes a handful

---

[5] An insurance "coverage form" generally contains the insuring agreement, coverage conditions, exclusions and policy definitions. See https://www.irmi.com/online/insurance-glossary/terms/c/coverage-form.aspx (lasted visited November 6, 2017).

[6] The Court may take judicial notice of matters in the public record. *Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005); *Schuh v. HCA Holdings, Inc.*, 947 F. Supp. 2d 882, 885 n.2 (M.D. Tenn. 2013); *In re: Unumprovident Corp. Securities Litig.*, 396 F. Supp. 2d 858, 877 (E.D. Tenn. 2005)

7

Case 3:17-cv-00819   Document 50   Filed 11/06/17   Page 8 of 13 PageID #: 1686

of throw-away arguments concerning four alleged scenarios under which policyholders may not have been damaged even if Auto-Owners should not have withheld labor depreciation from ACV payments. Dkt. 43 at 19-25. All of these arguments flow from Auto-Owners' failure to appreciate that discrete liability questions can be certified even if some class members' claims will ultimately fail for unrelated reasons.

*In re Whirlpool* makes clear that discrete liability issues can be certified and resolved when it is clear some class members will not ultimately prevail. *In re Whirlpool* specifically addressed Rule 23(c)(4) liability certification in the context of facts showing "currently satisfied Duet owners" that "never actually experienced a manifestation of the alleged defect" and "are pleased with the performance" of their washing machines. 722 F.3d at 855-56.

However, this case is far cleaner for certification than the fact pattern of *In re Whirlpool*. Here, the putative class as defined does not include any policyholder who has not allegedly suffered monetary loss.

### a. Argument #1: Auto-Owners' Policies "Cap" Payment Below ACV

Citing provisions within Section 2 of the "How Losses Are Settled" section of its policies (Dkt. 28-4, at 21; Dkt. 28-7, at 24), Auto-Owners briefly makes the throw-away argument that the actual cost of repairs can "cap" a claim payment below ACV. Dkt. 43, at 20-22. Therefore, Auto-Owners argues that some policyholders may not have been damaged by the disputed practice.

However, Auto-Owners ignores that the Section 2 "caps" are all to be "disregarded" by a policyholder to allow a minimum ACV payment. Both policies state: "You may *disregard the provisions of 2, above and make an actual cash value claim* for loss or damage to property covered under COVERAGE A or COVERAGE B." Dkt. 28-4, at 22, 36; Dkt. 28-7, at 24, 49

8

of throw-away arguments concerning four alleged scenarios under which policyholders may not have been damaged even if Auto-Owners should not have withheld labor depreciation from ACV payments. Dkt. 43 at 19-25. All of these arguments flow from Auto-Owners' failure to appreciate that discrete liability questions can be certified even if some class members' claims will ultimately fail for unrelated reasons.

*In re Whirlpool* makes clear that discrete liability issues can be certified and resolved when it is clear some class members will not ultimately prevail. *In re Whirlpool* specifically addressed Rule 23(c)(4) liability certification in the context of facts showing "currently satisfied Duet owners" that "never actually experienced a manifestation of the alleged defect" and "are pleased with the performance" of their washing machines. 722 F.3d at 855-56.

However, this case is far cleaner for certification than the fact pattern of *In re Whirlpool*. Here, the putative class as defined does not include any policyholder who has not allegedly suffered monetary loss.

### a. Argument #1: Auto-Owners' Policies "Cap" Payment Below ACV

Citing provisions within Section 2 of the "How Losses Are Settled" section of its policies (Dkt. 28-4, at 21; Dkt. 28-7, at 24), Auto-Owners briefly makes the throw-away argument that the actual cost of repairs can "cap" a claim payment below ACV. Dkt. 43, at 20-22. Therefore, Auto-Owners argues that some policyholders may not have been damaged by the disputed practice.

However, Auto-Owners ignores that the Section 2 "caps" are all to be "disregarded" by a policyholder to allow a minimum ACV payment. Both policies state: "You may *disregard the provisions of 2, above and make an actual cash value claim* for loss or damage to property covered under COVERAGE A or COVERAGE B." Dkt. 28-4, at 22, 36; Dkt. 28-7, at 24, 49

8

(emphasis added). Because a policyholder has the unfettered right to always receive ACV, at the least, there is no circumstance under which actual repair costs should result in a claim payment below ACV.

This is further supported by other language in Section 2 of the policies, which provides: "If you do not repair or replace the damaged covered property, we shall pay the actual cash value of the property at the time of the loss." Dkt. 28-4, at 21; Dkt. 38-7, at 24. Reading these provisions together, the plain language dictates that Auto-Owners is required to pay actual cash value "up-front," and then the insured can elect to make a further claim to recover the depreciation once the repair work is completed but no more than the actual cost of repairs. Because an insured can "disregard" the option to make repairs and recover the depreciation, there is no conceivable fact pattern that would allow Auto-Owners to pay less than ACV.

    b. *Argument #2: Some Policyholders May Have Received Full Limits*

Auto-Owners briefly argues that because the applicable policy limits of insurance can cause a payment to be capped below ACV, some putative class members may not have been damaged by the withholding of labor depreciation. Dkt. 43 at 20. However, Auto-Owners ignores that the proposed class definition excludes "any policyholder that received the full limits of the applicable coverage." Dkt. 27, at 2 n.2. As a result, no such policyholders are included in the putative class.

    c. *Argument #3: Some Policyholders Eventually Received The Disputed Amounts*

Auto-Owners briefly argues that some putative class members may not have suffered damages because they may have later submitted a replacement cost claim, and eventually received the previously withheld labor depreciation. Dkt. 43, at 20. Auto-Owners' statement is true, but its legal argument is wrong.

9

In fact, the First Amended Complaint alleges, to support Article III standing for the entire putative class: "Certain amounts initially withheld as labor depreciation may be later repaid to policyholders upon further adjustment of the claim. However, policyholders who have been subsequently repaid for initially withheld labor depreciation still have incurred damages, at the least, in the form of the lost 'time value' of money during the period of withholding, *i.e.*, interest." Dkt. 24 at ¶ 92.

Auto-Owners does not dispute or address the fact that the putative class members have monetary claims for prejudgment interest during the alleged period of wrongful withholding. Therefore, these putative class members have a claim for monetary damages, as well as Article III standing.

## CONCLUSION

For the foregoing reasons, the district court should certify an issue class and direct the parties to prepare a class notice for approval by the Magistrate Judge.

Dated: November 6, 2017

Respectfully submitted,

LARSON • KING, LLP

By: s/ T. Joseph Snodgrass
T. JOSEPH SNODGRASS (admitted *pro hac vice*)
30 East Seventh St., Suite 2800
St. Paul, MN  55101
(651) 312-6500
jsnodgrass@larsonking.com

and

J. BRANDON McWHERTER - #21600
GILBERT RUSSELL MCWHERTER SCOTT & BOBBITT, PLC
341 Cool Springs Blvd, Suite 230
Franklin, TN  37067
(615) 354-1144
bmcwherter@gilbertfirm.com

10

and

DAVID McMULLAN, JR. (admitted *pro hac vice*)
DON BARRETT (admitted *pro hac vice*)
DON BARRETT, P.A.
404 Court Square
Lexington, MS 39095
(662) 834-2488
dmcmullan@barrettlawgroup.com

***Attorneys for Plaintiffs and
Putative Class Representatives***

1668681

11

## CERTIFICATE OF SERVICE

  I hereby certify that a copy of the foregoing, **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF "ISSUE" CLASS CERTIFICATION,** was filed and served on November 6, 2017 via the Court's ECF filing system which will send electronic notices of same to all counsel of record:

| | |
|---|---|
| Todd A. Noteboom | John S. Hicks |
| Jeffrey G. Mason | Charles C. McLaurin |
| Zane A. Gilmer | BAKER, DONELSON, BEARMAN, CALDWELL & |
| STINSON LEONARD STREET LLP | BERKOWITZ, PC |
| 50 South Sixth Street | 211 Commerce Street |
| Suite 2600 | Suite 800 |
| Minneapolis, MN 55402 | Nashville, TN 37201 |
| (612) 335-1894 | (615) 726-7337 |
| todd.noteboom@stinson.com | jhicks@bakerdonelson.com |
| jeffrey.mason@stinson.com | cmclaurin@bakerdonelson.com |
| zane.gilmer@stinson.com | |

                s/ T. Joseph Snodgrass
                T. Joseph Snodgrass