**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **GREGORY J. LAMMERT, JAMIE** | ) | |
| **LAMMERT, LARRY REASONS, and** | ) | |
| **SUSAN REASONS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:17-cv-00819** |
| | ) | **Chief Judge Crenshaw** |
| **AUTO-OWNERS (MUTUAL)** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

Under an insurance policy that (1) defines actual cash value as "the cost to replace damaged property with new property of similar quality and features reduced by the amount of depreciation applicable to the damaged property immediately prior to the loss," or (2) states that "actual cash value includes a deduction for depreciation," can the insurer depreciate not only materials, but also a portion of the labor costs? Because the answer to that question is central to resolution of this case and has not been definitively answered by the Tennessee courts, and because the answer could affect thousands of policy-holders in this state, the Court will grant Plaintiffs' Motion to Certify Question to the Tennessee Supreme Court. (Doc. No. 46). The Court will also deny without prejudice the remaining pending Motions (Doc. Nos. 27, 32 & 35) because they all hinge to a greater or lesser extent on the answer to the certified question.

## I. **Factual Allegations**

The named Plaintiffs in this putative class action are two married couples: Gregory and Jamie Lammert, and Larry and Susan Reasons. Both couples had property insurance through Auto-Owners. Both also sustained covered losses to their property and received (or were offered)

payments for those loses that depreciated not only materials, but also labor.

**A. Gregory and Jamie Lammert**

The Lammerts own a dwelling and other structures in Nashville, Tennessee Those properties are insured under a standard form "Dwelling Insurance Policy" issued by Auto-Owners.

Hail damaged some of the Lammerts' residential buildings on May 10, 2016, and they filed a claim. Auto-Owners determined that coverage existed, and informed the Lammerts that the claim would be settled on an actual cash value basis. The policy at issue defined actual cash value as "the cost to replace damaged property with new property of similar quality and features reduced by the amount of depreciation applicable to the damaged property immediately prior to the loss." (Doc. No. 28-3 at 12).

Auto-Owners calculated its obligation to the Lammerts to be $9,986.36. It did so by first estimating the cost to repair or replace the damage with new materials ($12,146.55) and then subtracting for depreciation ($2,160.19). Both labor and materials were depreciated for certain line items.

After receipt of the calculation, Cornerstone Public Adjusting contacted Auto-Owners on behalf of the Lammerts, and questioned the depreciation. Cornerstone was advised *via* email that "Auto-Owners standard operating procedure is to apply depreciation to the replacement of the damaged item, which would include labor and materials." (Doc. No. 28-6 at 2).

**B. Larry and Susan Reasons**

The Reasons own a home and other structures (including a pool house) in Jackson, Tennessee. Those structure were insured under Auto-Owners' standard form "Homeowners Insurance Policy." That policy, however, did not contain the same language as the Lammerts'

policy defining actual cash value, but did provide: "If you do not repair or replace the damaged covered property, we shall pay the actual cash value of the property at the time of loss. Actual cash value includes a deduction for depreciation." (Doc. No. 24-3 at 24).

On November 18, 2016, some of the structures on Reasons' property suffered wind damage. The Reasons also suffered losses on March 9, 2017, as a result of a hail storm that damaged their residence and four other structures. Auto-Owners accepted both claims.

With regard to the November 2016 claim, Auto-Owners calculated the cost to replace the wind-damaged roofs and then deducted an amount to account for pre-loss depreciation. In response to the Reasons' complaint about depreciation for labor costs, Auto-Owners wrote:

> As to our applying depreciation to the full cost of repair to reach the actual cash value loss amount, we have always done this and know of no Tennessee law that would prohibit this from being done. It is a common practice with insurance carriers and complies with policy language to arrive at an actual cash value loss amount to be paid initially with recoverable depreciation to be paid once repairs have been completed.

(Doc. No. 28-9 at 2-3).

With regard to the March 2017 claim, the Reasons' policy provided for full replacement cost coverage, but the Reasons opted for the actual cash value under the policy. Accordingly, Auto-Owners again calculated the costs to repair or replace the damage property, and then deducted pre-loss depreciation, including labor.

## C. Other Allegations

According to Plaintiffs, many insurers licensed to do business in Tennessee pay full labor costs to both remove and reinstall damaged building material when making an actual cash value payment. This would include Farm Bureau Insurance–Tennessee, the state's largest domestic property insurance company. Other insurers do not. In fact, Auto-Owners' standard operating

procedure is to depreciate labor cost when calculating actual cash value, and this is accomplished through Xactimate®, a claims estimating software utilized by most insurance companies.

When using Xactimate®, the adjuster has the option to calculate deductions by changing the programs' default settings. With the click of a mouse, the adjuster can check boxes to depreciate for "material," "non-material," "removal," "overhead and profit," "sales tax," and any combination of these items. Thus, by clicking the box "depreciate removal" the adjustor depreciates the cost of removal labor; clicking the box "depreciate non-material" results in the labor for reinstallation being depreciated. The ensuing payments vary markedly, depending upon which boxes are checked.

To illustrate the point, Plaintiffs rely on a hypothetical claim for indemnity involving laminate flooring that was damaged by a sewer backup when two-thirds of its useful life remained. Under this hypothetical, and without depreciation for either removal of the old floor or reinstallation of the new floor, the actual cash value is $6,640.58. If, however, the cost of reinstallation labor is depreciated, the actual cash value becomes $4,414,83. If both reinstallation and removal labor are depreciated, the value drops $3,757.83. (Doc. No. 28 at 7-8).

## II. Motion to Certify Question

Where a state supreme court has a certification process available, the decision of whether to certify a question to that court "rests in the sound discretion of the federal court." Lehman Bros. v. Shein, 416 U.S. 386, 391 (1974). That discretion, however, must be exercised only after taking into account competing principles.

"[T]he federal courts generally 'will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks." Pennington v. State Farm Mut. Auto. Ins. Co., 553 F.3d 447, 450 (6th Cir.2009) (citation omitted). In fact, "[t]he state court need not have

addressed the exact question, so long as well-established principles exist to govern a decision." State Auto Prop. & Cas. Ins. Co. v. Hargis, 785 F.3d 189, 194 (6th Cir. 2015); see George v. Haslam, 112 F. Supp. 3d 700, 715 (M.D. Tenn. 2015) (citation omitted) (observing that "federal courts often answer state law questions, just as state courts answer federal questions" and hence "the practice of certifying questions can be overused and add unnecessary burden on the answering court, particularly when the certification involves routine, run-of-the mill legal questions").

Instead, "[n]ovel, unsettled questions of state law . . . are necessary before federal courts may avail themselves of state certification procedures.'" Arizonians for Official English v. Arizona, 520 U.S. 43, 79 (1997) (citation omitted). In such circumstances, "[t]aking advantage of certification made available by a State may 'greatly simplif[y]' an ultimate adjudication in federal court,'" id., while at the same time "help[ing] build a cooperative judicial federalism," Lehman Bros., 416 U.S. at 391.

The Tennessee Supreme Court specifically allows for the certification of questions, and "frequently accepts certified questions of law." Seals v. H & F, Inc., 301 S.W.3d 237, 241 n.3 (Tenn. 2010). In this regard, Rule 23 of the Rules of the Tennessee Supreme Court provides, in part:

> The Tennessee Supreme Court may, at its discretion, answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a District Court of the United States in Tennessee, or a United States Bankruptcy Court in Tennessee. This rule may be invoked when the certifying court determines that, in a proceeding before it, there are questions of law of this state which will be determinative of the cause and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee.

Tenn. Sup. Ct. R. 23 § 1. Thus, for certification to be proper, (1) resolution of the question at hand must be "determinative of the cause" and (2) there must be "no controlling precedent" from the Tennessee Supreme Court. Both prongs are satisfied in this case.

## A. **"Determinative of the Cause"**

Auto-Owners concedes that "if (as Plaintiffs contend) the question of whether Tennessee law prohibits labor-cost depreciation is unsettled and 'dispositive' of class-wide 'liability' . . . then that question should be certified to the Tennessee Supreme Court so that it may be answered most efficiently." (Doc. No. 43 at 4). Nevertheless, it opposes certification because "even if the Tennessee Supreme Court held that labor-cost depreciation should not be considered when estimating ACV [actual cash value], Plaintiff could not establish liability unless they also proved that (1) the pre -loss ACV of their properties was in fact more than what Auto-Owners estimated; and that (2) the entire insurance claim was in fact underpaid in light of the other facts affecting the claim." (Doc. No. 53 at 7). Thus, in Auto-Owner's view, any answer provided by the Tennessee Supreme Court would not be "determinative of the case" within the meaning of Rule 23. This Court disagrees.

"Rule 23 permits consideration of questions of law only, not questions of fact or controversies as a whole," Seals, 301 S.W.3d at 241 (Tenn. 2010), and "a question of law is 'determinative of the cause' if it is claim-dispositive." Lindenberg v. Jackson Nat'l Life Ins. Co., 147 F. Supp. 3d 694, 700 (W.D. Tenn. 2015). This is so because, "even though "Rule 23 itself is not clear as to whether the question of law must be determinative of the entire case or merely determinative of a claim or issue within the case," the Tennessee Supreme Court "has previously accepted certified questions involving a plaintiff's claims against only one defendant in a multi-defendant case." Becker v. Ford Motor Co., 2013 WL 6046080, at *2 (E.D. Tenn. Nov. 13, 2013) (collecting cases). It has also answered "important questions of first impression" that would "substantially dispose of the case," Swafford v. Harris, 967 S.W.2d 319, 321 (Tenn. 1998), and, in

Renteria-Villegas v. Metro. Gov't of Nashville & Davidson Cty., 382 S.W.3d 318, 324 (Tenn. 2012), answered a question that, in the district court's opinion, would "one way or the other, effectively determine the outcome of th[e] case," Renteria-Villegas v. Metro. Gov't of Nashville & Davidson Cty., 2011 WL 4048523, at *13 (M.D. Tenn. Sept. 12, 2011); see Grover by Grover v. Eli Lilly & Co., 33 F.3d 716, 719 (6th Cir. 1994) ("Certification has proved to be an important tool for federal courts sitting in diversity, since it frees them from having to speculate how state courts will decide important questions of state law."); Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co., 823 F. Supp. 2d 786, 824 (W.D. Tenn. 2011) (finding Rule 23 was satisfied with respect to issue of whether promissory estoppel was an exception to the statute of frauds, even though complaint also alleged common-law claims for breach of contract, promissory fraud, equitable estoppel, and violation of Tennessee Consumer Protection Act). "Answering a certified question does not finally dispose of the cause; it merely informs the district court, which retains jurisdiction over the cause, how to interpret the state law at issue." Haley v. Univ. of Tennessee-Knoxville, 188 S.W.3d 518, 521 (Tenn. 2006) (emphasis added).

Here, the Court requests the Tennessee Supreme Court's assistance in answering a precise issue under state law, an issue that is fundamental to Plaintiffs' overall claim, and one that serves as the basis for its class certification request. More specifically, the class Plaintiffs seek to represent is defined as follows:

> All persons and legal entities insured under an Auto-Owners homeowner or property policy who received "actual cash value" payments from Auto-Owners for direct physical loss to a dwelling or other structure located in Tennessee in which the cost of repair or replacement labor was depreciated.

(Doc. No. 25, Amended Complaint ¶ 90). Perhaps most telling as to the determinative nature of the issue is Auto-Owner's Motion to Dismiss and accompanying Memorandum (Doc. No. 35, 36),

which argues that Plaintiffs cannot state a claim because the Amended Complaint is premised on the notion that labor costs cannot be depreciated when calculating actual cash value.

**B. "No Controlling Precedent"**

The parties have not cited, and the Court has not located, any Tennessee cases that address the issue of whether labor costs can be depreciated for purposes of determining actual cash value under an insurance policy. Auto-Owners argues the lack of direct authority matters not because the law in Tennessee on this issue is "well settled." (Doc. No. 53 at 2).

According to Auto-Owners, "Tennessee law has long recognized that (1) ACV has no unambiguous meaning – 'actual value in terms of money,' Third Nat'l Bank v. Am. Equitable Ins. Co. of N.Y., 178 S.W.2d 915, 924 (Tenn. Ct. App. 1943); and that (2) the 'replacement less depreciation rule' or 'cost approach' at issue here is entirely consistent with indemnity and Tennessee's 'broad evidence rule.' Braddock v. Memphis Fire Ins. Co., 493 S.W.2d 453, 458 (459-60 (Tenn. 1973)." (Id.). For a number of reasons, the Court finds that the law may not be as settled as Auto-Owner believes.

First, the phrase "actual value in terms of money" as stated in Third National Bank does not answer the question of whether labor costs can be depreciated. Beside, "Tennessee law is clear that questions regarding the extent of insurance coverage present issues of law involving the interpretation of contractual language," Garrison v. Bickford, 377 S.W.3d 659, 663 (Tenn. 2012).

The Lammerts' policy defined "actual cash value" as "the cost to replace damaged property with new property of similar quality and features reduced by the amount of depreciation applicable to the damaged property immediately prior to the loss," while the Reasons' policy defined the phrase to

"include[] a deduction for depreciation," if they opted not to repair or replace the property. (Doc.

No. 23-6 at 24). Neither policy specifically addresses whether actual cost value allows for the

deduction of labor.

Second, if the Tennessee Supreme Court in Braddock adopted the broad evidence rule as

Auto-Owner's seems to suggest, it did so in a most understated way. The Court simply wrote:

> A fire insurance contract is a contract of indemnity. Its purpose is to reimburse the insured; to restore him as nearly as possible to the position he was in before the loss. The replacement-less-depreciation rule and the broad evidence rule operate to accomplish indemnity.

> The application of a replacement-with-out-depreciation rule, as contended for by plaintiffs, would frequently reap a profit for the insured, although it could result in a loss. Exhibit 3 to the complaint indicates that plaintiff Braddock's roof was 15 years old at the time of loss and that a new roof would cost $247.00.

> Obviously, the 'actual cash value' of the old roof, which was 15 years old, must have been considerably less than the cost of a new one. If he should recover the cost of a new roof, as contended for, he would have made a profit on the loss. The ends of indemnity would not have been served.

493 S.W.2d 459–60; compare Ohio Cas. Ins. Co. v. Ramsey, 439 N.E.2d 1162, 1169 (Ind. Ct. App.

1982) ("We therefore adopt the broad evidence rule as the measure of recovery for a total loss to real

property insured under a policy containing a liability-limiting clause such as the one in this case.");

Brooks Realty, Inc. v. Aetna Ins. Co., 149 N.W.2d 494, 495 (Minn. 1967) ("In determining the

actual loss of a partially destroyed building we adopt the broad-evidence rule[.]"); with C.L.

Maddox, Inc. v. Royal Ins. Co. of Am., 567 N.E.2d 749, 757 (Ill. App. 1991) ("While we are aware

that other states have adopted a 'broad evidence' rule which would permit the introduction of market

value evidence . . . we decline to adopt such a rule.").

Third, it appears that since Braddock was decided almost 45 years ago, it has been cited by

state and federal courts only nine times,[1] never by the Tennessee Supreme Court or Tennessee Court of Appeals, and never by any court as stating that the broad evidence rule was adopted in Tennessee. For its part, the Sixth Circuit has cited <u>Braddock</u> for the proposition that "[t]he actual cash value of a loss is equal to the repair or replacement costs less depreciation." <u>Parkway Assocs., LLC v. Harleysville Mut. Ins. Co.</u>, 129 F. App'x 955, 962 (6th Cir. 2005). Immediately after making that observation and citing <u>Braddock</u>, the Sixth Circuit stated:

> The Tennessee courts have not determined what repair or replacements costs include. Other courts, however, have held that "[r]epair or replacement costs logically and necessarily include any costs that an insured reasonably would be expected to incur in repairing or replacing the covered loss."

<u>Id</u>. at 962 (collecting cases). Such language lends support to Plaintiffs' position because an insured might reasonably expect that determining the repair or replacement costs would not include a depreciation for labor.

Fourth, labor depreciation was not the issue in either <u>Braddock</u> or <u>Third Nat'l Bank</u>. Instead, in both cases the underlying issue was whether it was proper for the jury to consider depreciation in determining the actual cash value of a loss covered by an insurance policy. It is one thing for the jury to consider depreciation as a factor in determining indemnity. In may be quite another matter for an insurer (as alleged here) to automatically deduct labor costs for removal and replacement in arriving at the actual cash value. As far as the Court can tell, this has not been answered by the Tennessee Supreme Court, making certification of the question proper. <u>See</u> <u>BKB Props., LLC v. SunTrust Bank</u>, 453 F. App'x 582, 588 (6th Cir. 2011) ("The certification of questions 'is most appropriate when the question is new and state law is unsettled.'").

---

[1] This figure is based upon a search in the Westlaw® database as of December 20, 2017.

Tennessee law aside, the answer to the question of whether labor costs can be depreciated has resulted in decidedly mixed results in other jurisdictions, depending upon the state law at issue and the policy language. State supreme court decisions that do not permit depreciation for labor costs include: Adams v. Cameron Mut. Ins. Co., 430 S.W.3d 675, 677-79 (Ark. 2015) (Arkansas law); Bellefonte Ins. Co. v. Griffin, 358 So.2d 387, 390-91 (Miss. 1978) (auto policy under Mississippi law). State supreme court decisions that do permit depreciation for labor costs include: Henn v. Am. Family Mut. Ins., Co., 894 N.W.2d 179, 189-91 (Neb. 2017) (Nebraska law); Wilcox v. State Farm Fire & Cas. Co., 874 N.W.2d 780, 784 (Minn. 2016) (Minnesota law). One state supreme court has indicated that the cost to remove materials cannot be depreciated because it is debris removal, Branch v. Farmers Ins. Co., 55 P.3d 1023, 1027-28 (Okla. 2002), but the labor cost to install new material is subject to depreciation, Redcorn v. State Farm Fire & Cas. Co., 55 P.3d 1017, 1019-21 (Okla. 2002) (Oklahoma law).

Federal courts seeking to divine state law and lower state courts are also not in accord. Compare McKenzie v. Farmers Ins. Exch., 2017 WL 2105030, at *3 (D.S.D. May 12, 2017) (South Dakota law); Brown v. Travelers Cas. Ins. Co. of Am., 2016 WL 1644342, at *3-5 (E.D. Ky. Apr. 25, 2016) (Kentucky law); Lains v. Am. Family Mut. Ins. Co., 2016 WL 4533075, at *2 (W.D. Wash. Feb. 9, 2016) (Washington law) (all finding labor depreciation not permitted or that alleged wrongful depreciation of labor cost stated a claim) with Graves v. Am. Family Mut. Ins. Co., 686 F. App'x 536, 540 (10th Cir. 2017) (Kansas law); Ware v. Metro. Prop. & Cas. Ins. Co., 220 F. Supp. 3d 1288, 1290-91 (M.D. Ala. 2016) (Alabama law); Papurello v. State Farm Fire & Cas. Co., 144 F. Supp. 3d 746, 768-69 (W.D. Pa. 2015) (Pennsylvania law) (all finding labor depreciation permitted).

Furthermore, because of the uncertainty in the law, numerous federal courts have certified the legal question their respective state supreme courts. In fact, the decisions in <u>Adams</u>, <u>Wilcox</u>, <u>Henn</u>, and <u>Redcorn</u>, which determined the state law in Arkansas, Minnesota, Nebraska, and Oklahoma, respectively, all arose from certified questions.

Likewise, in this case, the Court finds it prudent to certify the question, particularly because the issue is not confined to the litigants presently before the Court and potentially impacts thousands of insured and an unknown number of insurers. A wrong answer "'is no small matter, especially since a federal court's error may perpetuate itself in state courts until the state's highest court corrects it.'" <u>Haley</u>, 188 S.W.3d at 521 (quoting <u>Scott v. Bank One Trust Co.</u>, 577 N.E.2d 1077, 1080 (Ohio 1991)); <u>see</u> <u>Renteria-Villegas</u>, 382 S.W.3d at 320 (Tenn. 2012) ("Rather than requiring a federal court to make the law of this state or to abstain from deciding the case until the state courts resolve the point of law, answering certified questions from federal courts promotes judicial efficiency and comity and also protects this state's sovereignty.")

## C. Question to be Certified

Plaintiffs' request the following question be certified:

> Under the actual cash value terms and conditions of the two insurance policies at issue, may an insurer withhold a portion of repair labor as "depreciation" when making an ACV payment?

(Doc. No. 46 at 1). In response, Auto-Owners proposes the following question:

> Is an insurer prohibited by Tennessee law from deducting the estimated pre-loss depreciation in a structural property's economic value from the estimated cost of labor to repair or replace the property when estimating the property's pre-loss "actual cash value" under an insurance policy that does not define ACV, explains that ACV "includes a deduction for depreciation," or provides that ACV is calculated as the cost of repair or replacement less "the amount of depreciation applicable to the damaged property immediately prior to loss"?

(Doc. No. 53 at 8).

Of the two, Plaintiffs' proposal has virtue in its simplicity, although a little more detail as suggested by Auto-Owners is appropriate to account for the specific language at issue. Having considered the parties' submissions, the Court will certify the question as follows:

> Under Tennessee law, may an insurer in making an actual cash value payment withhold a portion of repair labor as depreciation when the policy (1) defines actual cash value as "the cost to replace damaged property with new property of similar quality and features reduced by the amount of depreciation applicable to the damaged property immediately prior to the loss," or (2) states that "actual cash value includes a deduction for depreciation"?

Obviously, the Tennessee Supreme Court is free to "exercise [its] discretion to reframe the Rule 23 certified question before [it] so as to provide the guidance actually sought." Shorts v. Bartholomew, 278 S.W.3d 268, 280 n.13 (Tenn. 2009); see Allmand v. Pavletic, 292 S.W.3d 618, 625 (Tenn. 2009) ("It may, at times, be necessary to slightly expand or restrict the scope of the question posed to the Court in order to further the interests of judicial efficiency, comity, and federalism that underlie our inherent judicial power to answer certified questions.").

### III.  Remaining Motions

Auto-Owners has filed a Motion to Dismiss (Doc. No. 35), arguing that the Complaint fails to state a claim because, "[u]nder well-established in Tennessee and elsewhere . . . the cost approach to calculating ACV is widely accepted and consistent with Tennessee's adoption of the broad evidence rule," and  "because Plaintiffs claim relies on a purported labor-depreciation prohibition that does not exist in Tennessee law[.]"  (Doc. No. 36 at 2 & 10).  These grounds are inextricably linked to the question to be certified and, as such, the Motion will be denied without prejudice to refiling after the certification process has concluded.

Plaintiffs' Motion for Class Certification (Doc. No. 27) is also connected to the question to

be certified because Plaintiffs seek to represent a class of insured who received actual cash value payment that depreciated labor cost. That motion, too, will be denied without prejudice.

This leaves Plaintiffs' Motion to Resolve Class Certification Issue Before or at Least Simultaneously With, a Ruling Any of the Dispositive Legal Issues Presented (Doc. No. 32). At this point, the Court is simply reserving ruling on Auto-Owner's Motion to Dismiss pending a decision by the Tennessee Supreme Court should it accept certification. Regardless, the Sixth Circuit has "consistently held that a district court is not required to rule on a motion for class certification before ruling on the merits of the case." Miami Univ. Wrestling Club v. Miami Univ., 302 F.3d 608, 616 (6th Cir. 2002). The Court will decide the order in which to address the Motion for Class Certification and the Motion to Dismiss after the certification process has concluded.[2]

In their reply brief, Plaintiffs also ask the Court to decide the class certification issue before certifying the question, arguing that the Tennessee Supreme Court is more likely to answer the question if this case is already certified as a class. Whether that is true, the Court has no way of knowing, particularly because the potential statewide ramifications of the question are made abundantly clear in both this decision and the Order Certifying Question. Further, Plaintiffs' argument neglects to consider that the "rigorous analysis" required by Rule 23 of the Federal Rules of Civil Procedure, "often overlaps with the merits of the plaintiff's underlying claim" because it "generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Comcast Corp. v. Behrend, 569 U.S. 27, 32 (2013). That rigorous

---

[2] Insofar as Plaintiffs request an extension of time of "at least six months" within which to file a further request for class certification (Doc. No. 27 at 5) given Local Rule 23.01(b)'s requirement that a motion for class certification be filed within sixty day of the filing of a class action complaint, the same is also denied. This does not prohibit Plaintiffs from seeking leave to file a further request for class certification, if appropriate, after the certification process has run its course.

analysis cannot be conducted without considering how Tennessee law would treat Plaintiffs' theory that labor costs cannot be depreciated.

Finally, and as Auto-Owners points out, Plaintiffs do not "explain why it would be most efficient for the Court to decide class certification based on its prediction of what the Tennessee Supreme Court would hold on the labor-depreciation question, when the Supreme Court could answer that question itself. That would resolve the question definitively, not just for the putative class, but for all Tennessee policyholders and insurers with policies like those here." (Doc. No. 43 at 34).

### IV. Conclusion

On the basis of the foregoing, Plaintiffs' Motion for Certification of Question to the Tennessee Supreme Court (Doc. No. 46) will be granted, but their Motion to Resolve Their Pending Motion for Class Certification Before, or at Least Simultaneously with, a Ruling on any Dispositive Legal Issues (Doc. No. 27) will be denied. Plaintiffs' Motion to Certify Class (Doc. No. 32) and Auto-Owners' Motion to Dismiss (Doc. No. 35) will be denied without prejudice to refiling after the certification process has been completed.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE