# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| GREGORY J. LAMMERT, JAMIE LAMMERT, LARRY REASONS, and SUSAN REASONS, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 3:17-cv-00819 ) |
| AUTO-OWNERS (MUTUAL) INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

This litigation arose out of Auto-Owners Insurance Company's practice of depreciating portions of labor cost when determining replacement costs under actual cash value homeowner and dwelling insurance policies. These include policies purchased by Plaintiffs Gregory and Jamie Lammert, and Larry and Susan Reasons.

The debatable propriety of that practice led the Court to deny without prejudice Plaintiffs' Motion to Certify Class (Doc. No. 32) and Auto-Owners' Motion to Dismiss (Doc. No. 35) in favor of certifying the following question to the Tennessee Supreme Court:

> Under Tennessee law, may an insurer in making an actual cash value payment withhold a portion of repair labor as depreciation when the policy (1) defines actual cash value as "the cost to replace damaged property with new property of similar quality and features reduced by the amount of depreciation applicable to the damaged property immediately prior to the loss," or (2) states that "actual cash value includes a deduction for depreciation"?

Lammert v. Auto-Owners (Mut.) Ins. Co., 286 F. Supp. 3d 919, 927 (M.D. Tenn. 2017). That court graciously accepted the request, and answered the question: "no, the insurance company cannot withhold a portion of the labor costs as depreciation under either [the Lammert's or the Reasons']

policy." Lammert v. Auto-Owners (Mut.) Ins. Co., 572 S.W.3d 170, 179 (Tenn. 2019).

At the time the Court certified the question, the Amended Complaint contained a straightforward breach of contract claim that sought compensatory and punitive damages, plus declaratory and injunctive relief. They also putatively represented a class containing all other similarly situated insureds "who received 'actual cash value' payments from Auto-Owners for direct physical loss to a dwelling or other structure located in Tennessee in which the cost of repair or replacement labor was depreciated." (Doc. No. 24, Amended Complaint ¶ 90).

After the favorable ruling from the Tennessee Supreme Court, Plaintiffs again amended their complaint. The Second Amended Complaint retained the breach of contract claim and request for punitive damages, but also added a statutory bad faith claim. It also arguably expanded the proposed class period.

Now before the Court is Auto-Owners' fully-briefed Motion to Dismiss and to Strike Class Allegations (Doc. Nos. 85, 86, 117 & 120). In the motion, Auto-Owners argues that "Plaintiffs' bad faith, fraudulent concealment, and punitive damages claims have failed to state causes of action for which relief can be granted; and that Plaintiffs' class allegations should be stricken to the extent they relate to the bad faith claim and to the extent Plaintiffs seek to define a class period that extends beyond the one-year contractual limitations period contained in Auto-Owners' policies." (Doc. No. 86 at 1). Leaving aside the alleged procedural deficiencies claimed by Plaintiffs, the Court agrees with many of the points raised by Auto-Owners, but its request for dismissal or to strike is premature.

To survive a motion to dismiss, a claim must be plausible after the complaint is construed in plaintiff's favor and the well-pleaded factional allegations are accepted as true. Ohio Pub.

Employees Ret. Sys. v. Fed. Home Loan Mortg. Corp., 830 F.3d 376, 383 (6th Cir. 2016). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In order to determine whether a claim is plausible, however, there must be a claim to examine.

The operative Second Amended Complaint does not contain a claim for "fraudulent concealment." Nowhere in the complaint is that phrase even mentioned. The word "fraud" and the derivatives thereof only appear twice in a single paragraph where Plaintiffs assert that the actions Auto-Owners took, or did not take, entitle them and the class members to punitive damages. (Doc. No. 83, Second Amended Complaint ¶ 45).

It is true that the Second Amended Complaint contains allegations that Auto-Owners concealed from Plaintiffs and the putative class members its practice of depreciating labor cost, such as by manipulating the settings in Xactimate®.[1] It is also true that the Second Amended Complaint suggests this concealment could not have harmed the named Plaintiffs because they were informed of the labor depreciation practice in such a fashion that they could file suit within the one-year limitations period set forth in their policies. And it is true that "as goes the claim of the named plaintiff, so goes the claim of the class." Sprague v. Gen. Motors Corp., 133 F.3d 388, 399 (6th Cir. 1998). But none of this changes that the Court cannot dismiss a claim that hasn't been pled. Govea v. Monrovia Unified Sch. Dist., No. CV1703093ABMRWX, 2017 WL 10526059, at *2 (C.D. Cal. July 7, 2017) (noting that "as defense counsel surely knows, the Court cannot dismiss claims that

---

[1] As this Court noted in its prior opinion, Xactimate® is a claims estimating software utilized by most insurance companies.

do not exist" even where the request to dismiss is made "in an apparent effort to preemptively dismiss claims that might be brought at some later time"); Chimenti v. Pa. Dept' of Corr., No. CV 15-3333, 2016 WL 1125580, at *15 (E.D. Pa. Mar. 21, 2016) ("[W]e cannot dismiss a claim that does not exist[.]").  In so ruling, the Court recognizes Rule 23's requirement that a court decide whether to certify a class "[a]t an early practicable time after a person sues or is sued as a class representative," Fed. R. Civ. P. 23(c)(1), but it is impossible for the Court to know at this point whether Plaintiffs claims are typical and whether the insured they seek to represent are similarly situated: maybe there are a number of putative class members claims barred by the statute of limitations, maybe not.  This is better addressed in the context of a motion to certify class under Rule 23 after discovery has been conducted. See Bartels v. Hudson Ins. Co., No. CIV. A. 05-3890 JLL, 2008 WL 5070660, at *2 (D.N.J. Nov. 24, 2008) ( "the issue of whether or not [plaintiff] satisfies the typicality prong of the class certification analysis [while] interesting . . . it is not directly relevant on a motion to dismiss"); Morris v. City of Charlottesville, No. CIV. A. 300CV00029, 2001 WL 743771, at *7 (W.D. Va. July 3, 2001) (refusing to decide defendants' 12(b)(6) motion as premature because it was "related to the issue of class certification," and court would "not decide the certification issue until relevant discovery is complete").

Auto-Owners' assertion that Plaintiffs may seek to rely on a theory of fraudulent concealment to toll a statute of limitations defense only underscores the prematurity of its motion. An answer has yet to be filed, a statute of limitations defense has not been interposed, and plaintiffs ordinarily are not required to plead around an affirmative defense. Nat'l Credit Union Admin. Bd. v. Jurcevic, 867 F.3d 616, 624 (6th Cir. 2017); Schmidt v. Skolas, 770 F.3d 241, 252 (3d Cir. 2014); see also, Pfeil v. State St. Bank & Trust Co., 671 F.3d 585, 599 (6th Cir.2012) ("Courts generally

4

cannot grant motions to dismiss on the basis of an affirmative defense unless the plaintiff has anticipated the defense and explicitly addressed it in the pleadings.").[2] Moreover, "affirmative defenses "frequently turn on facts not before the court at [the pleading] stage." Hyson USA, Inc. v. Hyson 2U, Ltd., 821 F.3d 935, 939 (7th Cir. 2016) (bracket in original) (citation omitted).

Next, Auto-Owners argues that the answer provided by the Tennessee Supreme Court to the certified question disposes of Plaintiffs' bad faith claim and request for punitive damages. It does not, at least not entirely. What it does is make clear that the issue of whether a portion of the cost of labor to repair damaged property could be deducted from the total replacement cost when calculating actual cash value was, to-then, an open question in Tennessee and that cases in other jurisdictions were split on the issue. This Court's underlying opinion was the same – Tennessee law was unsettled and, "the answer to the question of whether labor costs can be depreciated has resulted in decidedly mixed results in other jurisdictions." 286 F. Supp. 3d at 926. Indeed, it was for this reason that the Court chose to certify the issue, and it was for this reason that the Tennessee Supreme Court found both parties' interpretation of the policy language "plausible." 572 S.W.3d at 178.

Because both parties' position was "plausible," it necessarily follows that a bad faith claim or punitive damages request based upon Auto-Owners' refusal to pay full labor costs is "implausible" for purposes of Rule 12(b)(6), Iqbal, and Twombly. After all, bad faith requires a plaintiff "to demonstrate there was no legitimate grounds for disagreement about coverage," Fulton-Bellows, LLC v. Fed. Ins. Co., 662 F.Supp.2d 976, 996 (E.D. Tenn. 2009), and punitive damages are generally unavailable in breach of contract cases, except in the most "egregious" of cases.

---

[2] To the extent that Plaintiffs may have anticipated a statute of limitations defense and their concealment allegations are directed towards such a defense, the Court will not dismiss the class claims for the reasons stated below with respect to Auto-Owner's motion to strike.

Rogers v. Louisville Land Co., 367 S.W.3d 196, 212 n.14 (Tenn. 2012). As a consequence, the Tennessee Supreme Court's opinion (and, for that matter, this Court's decision that preceded it) necessarily precludes a bad faith claim and punitive damages to the extent either is based on Auto-Owner's decision to depreciate labor.

Plaintiffs' allegations are not so limited, however. They claim that Auto-Owners engaged in both pre-litigation and post-litigation conduct beyond the depreciation of labor costs that entitles them to punitive damages and/or the 25% penalty under the bad faith statute. The Tennessee Supreme Court's opinion does not go that far.

Auto-Owners also argues that putative class members cannot take advantage of the bad faith statute if they did not make a demand as required by Tenn. Code Ann. § 56-7-105, while Plaintiffs contend that their individual demands – to wit, "the subject insurance policy be honored and that their claim, as well as a class of similarly situated policy holders be paid in full without depreciation of labor " (Doc. No. 72-2 at 1) – suffices for all. Again, this need not be decided at this juncture.

In support of its position, Auto-Owners submits that "numerous courts agree that named plaintiffs cannot satisfy a pre-suit demand on behalf of putative class members," but in their opening brief they cite only Chevron USA Inc. v. Vermilion Parish School Board, 377 F.3d 459 (5th Cir. 2004), a Fifth Circuit case dealing with mineral leases under Louisiana law, not Tennessee's bad faith statute. Regardless, Auto-Owners' argument is premature because this Court has no way of knowing whether, in fact, a number of putative class members made demands on their own behalf, unlikely though that may be. Moreover, assuming that some putative plaintiffs filed demands while others did not (if the class wide demand was insufficient), this is something that likely can be addressed via subclasses that allow for the 25% penalty for some, but not others.

Finally, Auto-Owners moves to strike Plaintiff's reliance on a six-year limitations period because their policies specifically provided that "[s]uit must be brought within one year after the loss or damage occurs," (Doc. No. 83-1 at 22), and they allege that the putative class member's policies are "identical in all respects material respects," (Doc. No. 83, Second Amended Complaint ¶ 135). Presumably, Auto-Owners is relying on Rule 12(f)'s provision that a court can strike "immaterial" matters "from a pleading." Fed. R. Civ. P. 12(f). The problem is, however, that the Second Amended Complaint does not set forth the six-year statute of limitations. Instead, Auto-Owners derives this period from "Plaintiffs' discovery requests [that] make clear Plaintiffs assert at least a six year class period." (Doc. No. 87 at 5).

In the Second Amended Complaint, Plaintiffs, on behalf of those they seek to represent, request "the maximum limitations period as may be allowed by law and arguments of counsel." (Doc. No. 83, Second Amended Complaint ¶ 120). Frankly, the Court does not know what to make of a limitations period based on the "argument of counsel," but the governing law is "that a contractually agreed limitations period in an insurance policy is valid and enforceable in Tennessee," Certain Underwriters at Lloyd's of London v. Transcarrier, Inc., 107 S.W. 3d 496, 499 (Tenn. Ct. App. 2002), and the one-year statute of limitations in Auto-Owners' homeowner's policies has been held to be "reasonable," Beam v. Auto Owners Insurance Co., No. 3:13-cv-160-JMH, 2013 WL 3976622 at *2 (E.D. Tenn. Aug. 2, 2013). Nevertheless, because the six year limitation period does not appear in the Second Amended Complaint, there is nothing to strike.

On the whole, Auto-Owners believes that "Plaintiffs' claims for fraudulent concealment, bad faith, and punitive damages . . . distract from the core issues left in this case," which is "whether Auto-Owners breached its contracts with Plaintiffs, and whether that question is suitable for class

7

resolution." (Doc. No. 87 at 20). To get back on track, Auto-Owners submits that "the court should dismiss these claims now, pare back the class allegations, and focus this case on issues properly in dispute." (Id.). Auto-Owners may have a point, but it has chosen improper vehicles (Rules 12(b)(6) and (f)) to steer this case back on course, if it is indeed going down the wrong path. For now, Plaintiffs are at the controls. That said, any forthcoming motion to certify this as a class action should be informed by the observations the Court has made in this Memorandum Opinion.

Auto-Owners' Motion to Dismiss and to Strike Class Allegations (Doc. No. 86) is **DENIED.**

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE