IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

---

GREGORY J. LAMMERT, JAMIE
LAMMERT, LARRY REASONS,
and SUSAN REASONS,

        Plaintiffs,

v.

AUTO-OWNERS (MUTUAL)
INSURANCE COMPANY,

        Defendant.

Civil Action No. 3-17-cv-00819

Waverly D. Crenshaw, Jr.
Barbara D. Holmes

JURY DEMANDED

---

## CLASS ACTION SETTLEMENT AGREEMENT

---

This Class Action Settlement Agreement (the "Settlement Agreement" or "Agreement") is entered into by and among the named Plaintiffs, Gregory Lammert, Jamie Lammert and Susan Reasons (hereinafter "Representative Plaintiffs"), on behalf of themselves and the stipulated class they represent as defined below, on the one hand, and Auto-Owners Insurance Company ("Defendant" or "Auto-Owners"),[1] on the other hand, by and through their respective counsel. Representative Plaintiffs and Defendant will be collectively referred to as the "Parties" and individually as a "Party" to this Agreement.

---

[1] For purposes of doing business in Tennessee, Auto-Owners Insurance Company is known as Auto-Owners (Mutual) Insurance Company, the named Defendant in this litigation.

## RECITALS

WHEREAS, Representative Plaintiffs and Larry Reasons filed this lawsuit on May 10, 2017, in this litigation styled *Lammert, et al. v. Auto-Owners (Mutual) Insurance Company, et al*, Civil Action No. 3:17-CV-00819 (M.D. Tenn.) (the "Lawsuit");

WHEREAS, the Representative Plaintiffs and Larry Reasons sought, on behalf of themselves and a putative class of persons as defined herein (the "Settlement Class"), money damages related to the withholding of estimated non-material costs as depreciation from Actual Cash Value ("ACV") payments for insurance claims on policies issued by Defendant;

WHEREAS, the Court in this Lawsuit submitted to the Tennessee Supreme Court a certified question of law under Tennessee Supreme Court Rule 23, which resulted in an April 15, 2019 decision entitled *Lammert v. Auto-Owners Mutual Insurance Company*, 572 S.W.3d 170 (Tenn. 2019);

WHEREAS, the parties subsequently engaged in further discovery, deposition and motion practice in the Lawsuit;

WHEREAS, Larry Reasons passed away on August 24, 2019;

WHEREAS, the Representative Plaintiffs filed a motion for class certification on December 6, 2019 to which Defendant has not yet responded;

WHEREAS, Defendant stipulates, for purposes of this Settlement Agreement only, that Representative Plaintiffs are adequate class representatives;

WHEREAS, counsel for the Representative Plaintiffs and Settlement Class ("Class Counsel") has conducted a review of the facts relating to the claims against Defendant, and has analyzed the legal issues in connection with such claims, and believes that this settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class and that this Settlement Agreement should be approved by the Court pursuant to Federal Rule of Civil Procedure 23;

2

WHEREAS, Defendant disputes the claims made against it in the Lawsuit and denies any liability to the Representative Plaintiffs and the Settlement Class, and

WHEREAS, Defendant contends that the question of underpayment (*i.e.*, whether Defendant breached its policy by paying less than it owed) cannot be determined through generalized or common proof, and that the Representative Plaintiffs have failed to establish that Defendant underpaid them or any member of the Settlement Class;

WHEREAS, Defendant is entering into this Settlement Agreement solely to avoid the costs and uncertainties of continued litigation of the Lawsuit;

WHEREAS, subject to the approval of the Court, the Parties now wish to terminate the Lawsuit and effect a compromise that each deems to be in the best interests of each respective Party;

WHEREAS, this Settlement Agreement was the result of arm's-length negotiations among counsel for the Parties, document and information exchange via formal and informal discovery, and substantial claims data analyses, deposition testimony, expert disclosures, discovery and dispositive motion practice before the district court and Tennessee Supreme Court; and,

WHEREAS neither this Settlement Agreement, nor any exhibits hereto or discussions or other documents related to this Settlement Agreement, shall constitute any evidence against or any admission by any Party in this or any other litigation or proceeding with respect to any issue which was or could have been asserted in the Lawsuit, including but not limited to the merits of the allegations made in the Lawsuit and the appropriateness of class certification, except that this Agreement may be used to seek approval of and enforce the terms of this Agreement.

NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the undersigned that the claims asserted in the Lawsuit shall be settled, compromised, and released in

their entirety, subject to the approval of the Court, upon and subject to the following terms and conditions:

## THE SETTLEMENT CLASS AND CLAIMS ADMINISTRATION

1.       The Settlement Class shall be certified for purposes of this Agreement only. The Settlement Class means the following policyholders:

> All Auto-Owners' property insurance policyholders who made a structural damage claim for property in the State of Tennessee during the class period, which
>
> (a) resulted in a Net Actual Cash Value Payment from which "non-material depreciation" was withheld from the policyholder; or
>
> (b) would have resulted in a Net Actual Cash Value Payment but for the withholding of "non-material depreciation" causing the loss to drop below the applicable deductible.

### Class Period

The class period will vary by the type of coverage form in place for each policyholder, as follows:

>        a.       All policyholders with applicable claims having a date of loss between after March 9, 2016, and February 6, 2020, for property policies with a one-year "suit limitations" clause;
>
>        b.       All policyholders with applicable claims having a date of loss on or after March 9, 2015, and February 6, 2020, for property policies with a two-year "suit limitations" clause.

### Exclusions

The proposed class excludes the following:

>        a.       Claims arising under the following Auto-Owners Policy Forms:
>
>                1.       "Labor Permissive" forms,[2] including Forms 15542 (7-19), 57911 (7-19), and 57912 (7-19);

---

[2] "Labor Permissive" forms are the forms identified in the text above. These publicly-filed forms were approved for use by the Tennessee Commissioner of Insurance on September 19, 2019, and state in relevant part that "depreciation … includes … the cost of … labor" when calculating actual cash value.

4

2. "Builders Risk" coverage forms, including Forms CP 00 20 10 90; 16690 (7-14), 16691 (7-14), and 16695 (7-13);

b. Any claims for which the applicable limits of insurance were exhausted by the initial actual cash value payment.

c. The Court, its staff, Plaintiffs' counsel, Defendant and its affiliates, officers and directors.

"Non-material depreciation" means, in the Xactimate estimating software platform, the amount of depreciation attributable to the selection of "Depreciate Non-Material," "Depreciate Overhead and Profit" and/or "Depreciate Removal."

"Net Actual Cash Value Payment" means a payment, for structural damage claims, of the actual cash value of the loss minus the applicable deductible.

2. Any certification of a preliminary or final Settlement Class pursuant to the terms of this Agreement shall not constitute, shall not be construed as, and shall not be admissible in any proceeding as an admission of the Defendant or that the Lawsuit or any other action is appropriate for class treatment at trial pursuant to Rule 23 of the Federal Rules of Civil Procedure. This Agreement shall not prejudice Defendant's rights or any other person's rights: (a) to oppose class certification in the Lawsuit in the event this Agreement is terminated or nullified for any reason, or in the event the Court disapproves or sets aside any material aspect of this Agreement; or (b) to oppose class certification in any other action or proceeding.

3. This Agreement, any negotiations or proceedings related hereto, the implementation hereof, and any papers submitted in support of the motions for approval hereof (collectively, the "Settlement Proceedings") shall not be construed as, or deemed to be evidence of, any admission or concession by any of the Parties or any other person regarding liability, damages, or the appropriateness of class treatment, and shall not be offered or received in evidence in any action or proceeding for any purpose whatsoever; provided, however, that this Agreement and the Settlement Proceedings may be presented to the Court in connection with the

implementation or enforcement of this Agreement and to any other Court as necessary to enforce the terms of this Agreement.

## THE PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS

4.      As soon as practicable after the execution of this Settlement Agreement, the Parties shall present this Settlement Agreement to the Court and request that the Court enter a Preliminary Approval Order substantially in the form of Exhibit A hereto:

a.      Providing that the Lawsuit may be maintained as a class action for purposes of this Agreement only;

b.      Providing that the Agreement shall apply to the Settlement Class as defined in paragraph 1 above;

c.      Specifying that Settlement Class members shall have sixty (60) days from the mailing of the Notice of Proposed Class Action Settlement ("Class Notices") by the Claims Administrator to opt out of this Agreement, or file and serve objections to this Agreement;

d.      Preliminarily approving the Settlement Agreement as fair, reasonable, and adequate;

e.      Designating the following attorneys as counsel for the Settlement Class ("Class Counsel"):

J. Brandon McWherter
McWherter Scott & Bobbitt, PLC
341 Cool Springs Blvd., Ste. 230
Franklin TN  37067
(615) 354-1144

T. Joseph Snodgrass
Larson King, LLP
30 East Seventh St., Ste. 2800
St. Paul, MN  55101
(651) 312-6500

6

f.      Finding that the mailing of the Class Notices, as described below, and substantially in the form attached hereto as Exhibit B, satisfies the requirements of due process and applicable law and procedure. The Class Notices shall apprise class members of the material terms of the Settlement Agreement; their right to receive monetary benefits under the Settlement Agreement absent their opting-out of the lawsuit; their right to object to the proposed Settlement Agreement; that any objection to the proposed Settlement Agreement including the reason or basis for such objection must be filed with the Court and served upon designated Class Counsel and counsel for Defendant no later than sixty (60) days from the mailing of the Class Notices by the Notice Administrator; and that any persons who seek to opt out or exclude themselves from the Settlement Class must do so within sixty (60) days after the mailing of the Class Notices Notice Administrator. The Class Notices shall further inform class members that a Final Approval Hearing to determine the fairness, reasonableness, and adequacy of the proposed Settlement Agreement will be held on the date fixed by the Court, provided that the Final Approval Hearing may be postponed, adjourned, or continued by order of the Court without further notice to the members of the Settlement Class;

g.      Appoint Rust Consulting, Inc. as the Notice Administrator.  The Notice Administrator will provide Defendant and Class Counsel such reasonable access to the notice process as they may need to monitor compliance with this Agreement. The cost of the Class Notice will be initially borne by Class Counsel and reimbursed from the common fund in accord with paragraph 13(c) below;

7

h.    Preliminarily enjoin any Class Member from bringing a new alleged class action or attempting to amend an existing action to assert any class claims that would be released pursuant to this Agreement; and

i.    Directing that a Final Approval Hearing be held by the Court on such day and at such time as may be designated by the Court for the purpose of determining whether the Settlement Agreement should be finally approved by the Court as fair, reasonable, and adequate.

## CLASS NOTICE AND OPT-OUT PROCEDURES

5.    As soon as practicable after the Preliminary Approval of the Settlement Agreement as provided in Paragraph 4, but in any event no more than thirty (30) days after entry of the Preliminary Approval order, Defendant shall ascertain, using claims payment data maintained in the ordinary course of business, the contact information for all persons or entities who may be reasonably likely to be members the Settlement Class, including name, last-known address, last known e-mail address and phone number for each policyholder who is reasonably likely to be within the Settlement Class, and provide that information to the Notice Administrator and Class Counsel. Notice Administrator shall then search the National Change of Address Database for a more current name and/or address for each such insured.  The Notice Administrator shall send a copy of the Class Notice by first-class mail and e-mail to each policyholder identified by Defendant as described in herein.  The Notice Administrator will use its best efforts to complete the mailing and e-mailing not less than seventy-five (75) days prior to the Final Approval Hearing.

6.    If any Individual Notice is returned to the Notice Administrator as undeliverable, the Notice Administrator will promptly log each such Individual Notice and provide copies of the log to Defendant and Class Counsel as requested. If the Individual Notice is returned to the Notice Administrator with a forwarding address, the Administrator will forward the Individual Notice to

8

that address by first-class mail. In the event that no forwarding address is provided, or in the event that the Individual Notice is returned as undeliverable despite mailing it to the forwarding address, then the Notice Administrator will contact the policyholder by e-mail.

7.      Publication on the Internet: The Class Notice will also be posted on a website (the "Website") that is created, monitored, and maintained by the Notice Administrator or its designee within seven (7) days of entry of the Preliminary Approval Order described above, and maintained by the Notice Administrator or its designee until thirty (30) days after issuance of all payments to be made as a part of the Settlement Agreement.  The Website shall contain this Settlement Agreement and all of its attachments, a Frequently Asked Questions section based upon the proposed Class Notice, the Tennessee Supreme Court's decision, the Second Amended Complaint and contact information for Class Counsel and the Notice Administrator..

8.      Members of the Settlement Class shall have the right to be excluded from the Settlement Class, provided that any such person or entity complies with the following procedures:

a.      Within sixty (60) days after the mailing of the Class Notices by the Notice Administrator, any member of the Settlement Class electing to opt out of the Settlement Class must deposit in the U.S. mail via first class delivery or send via an overnight delivery service an opt-out notice addressed to the Notice Administrator which includes: (1) his or her name, address, telephone number, and email address (if available); (2) that he or she desires to be excluded from the Settlement Class; and

b.      Members of the Settlement Class who do not opt out in accordance with this Agreement during the opt out period will be deemed Settlement Class members for all purposes under this Agreement and will be irrevocably bound by this Agreement.

## THE FINAL APPROVAL HEARING AND FINAL JUDGMENT AND ORDER

9.    The Parties agree to petition the Court to hold a Final Approval Hearing and to enter a Final Judgment and Order Approving the Settlement (the "Final Approval Order") on a date to be scheduled by the Court in accordance with the notice, opt-out and objection timelines set forth in this Agreement. The Parties shall request the Final Approval Order be entered in a form consistent with that attached as Exhibit C, which shall:

a.    Find that the proposed Settlement Class satisfies the requirements of Federal Rule of Civil Procedure 23;

b.    Approve this Settlement Agreement without modification (except insofar as the parties have agreed to such modification in writing) as fair, reasonable, and adequate to the Settlement Class and direct its consummation according to its terms;

c.    Find that the form and manner of notice implemented pursuant to this Settlement Agreement (i) constituted reasonable and the best practicable notice; (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise the class members of the pendency of the Lawsuit, the terms of the proposed Settlement Agreement, the right to object to or exclude themselves from the proposed Settlement Agreement, and the right to appear at the Final Approval Hearing; (iii) constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) met the requirements of due process, the Federal Rules of Civil Procedure, and any other applicable laws;

d.    Find that all members of the Settlement Class (except those who have properly excluded themselves) shall be bound by this Settlement Agreement, including the release provisions and covenant not to sue;

10

e. Direct that judgment be entered dismissing on the merits and with prejudice all claims asserted in the Lawsuit;

f. Incorporate the releases set forth herein, and forever bar any claims or liabilities related to the Lawsuit or any Released Claims against Defendant as defined herein;

g. Award Class Counsel reasonable attorneys' fees and reimbursement of litigation expenses for prosecuting the Lawsuit on behalf of the Settlement Class as may be approved by the Court;

h. Award the Representative Plaintiffs a reasonable service payment for their services as representatives on behalf of the Settlement Class as may be approved by the Court;

i. Retain jurisdiction in this Court of all matters relating to the interpretation, administration, implementation, and enforcement of this Settlement Agreement; and,

j. Direct that the judgment of dismissal with prejudice be entered immediately.

10. The "Effective Date" of this Settlement Agreement shall mean the date on which all of the following conditions have been satisfied:

a. The District Court has entered a Final Approval Order that conforms to the terms and conditions required by this Agreement; and

b. The Final Approval Order has become final. The Final Order and judgment shall become Final upon the later of: (i) all periods within which to file an appeal from the Final Approval Order have expired without the filing of any appeal, or (ii) in the event that an appeal from the Final Approval Order is filed, a final order bas been entered disposing

of the appeal, and any time for seeking leave to appeal or time for further appeal has expired.

11.     Any objections to the Settlement Agreement must be in writing, and must: (i) include the objecting party's full name, address, telephone number and other information needed to confirm that the objecting party is a member of the Settlement Class as defined above; (ii) advise of whether the objector intends to appear at the Final Approval Hearing; and (iii) identify each specific objection, as well as its basis and any legal support for each objection.  All documents specified in this paragraph must be filed with the Court and served upon designated Class Counsel and counsel for the Defendant no later than sixty (60) days after Class Notice is mailed in accordance with the Court's Preliminary Approval Order.

12.     No person shall be entitled in any way to contest the approval of the terms and conditions of this Settlement Agreement or the Final Approval Order except by filing and serving written objections in accordance with the provisions of this Settlement Agreement. Any member of the Settlement Class who fails to exclude himself or herself from the Settlement Class in accordance with this Agreement, or who fails to object in the manner prescribed, shall be deemed to have waived, and shall be foreclosed forever from raising objections or asserting any claims arising out of, related to, or based in whole or in part on any of the facts or matters alleged, or which could have been alleged, in the Lawsuit.

## SETTLEMENT CLASS BENEFITS

13.     After the Effective Date, Defendant will provide the following benefits to the Settlement Class:

      a.     Timing.  By no later than fifteen (15) days of the Effective Date, Defendant will begin issuing payments to Settlement Class members via check, sent by first class mail, for the Class Member Payments, as more fully defined in Section 13(d) below.

12

Defendant shall use its reasonable best efforts to complete such payments within thirty (30) days of the Effective Date. Within fifteen (15) days of the Effective Date, any service payments awarded to the Representative Plaintiffs by the Court shall be sent by wire transfer to a trust account as designated by Class Counsel. Similarly, within fifteen (15) days of the Effective Date, any attorneys' fees and costs awarded to Class Counsel by the Court shall be sent by wire to an account as designated by Class Counsel.

      b.    <u>Service Awards</u>. The Representative Plaintiffs will be paid the amount of any service payment award as may be ordered by the Court. Defendant has agreed not to object to a request for a service award up to $10,500 per named Representative Plaintiff, plus an additional $10,500 for Susan Reasons on behalf of the service provided by Larry Reasons prior to his death. These payments shall be compensation and consideration for the Representative Plaintiffs' efforts, time, and energy as the class representatives in this case.

      c.    <u>Attorneys' Fees and Costs</u>. Class Counsel will seek as attorneys' fees an amount no greater than 33% of the aggregate payments to the "Group 1" Settlement Class Members from the Settlement Class Payments described below. The Plaintiffs will separately request reimbursement for their payments to the Notice Administrator and their litigation expenses. Class Counsel's fees and reimbursements shall paid from the common fund, consisting of the aggregate payments to the "Group 1" Settlement Class Members, as described in Paragraph 13(d)(iii) below.

      Defendant will not take a position on the reasonableness of Class Counsel's application for an award of attorneys' fees, or Notice Administrator costs and litigation expenses, so long as the request complies with the limitations set forth within this

13

paragraph, nor will Defendant encourage or solicit others to oppose Class Counsel's application for fees and expenses.

    d.    <u>Class Member Payments</u>:

    i.    **Group 1 (Regular):** Under this Settlement Agreement, each Class Member from whom non-material depreciation was withheld and not subsequently recovered in its entirety, shall receive a gross cash payment equal to 100% of the principal amount of any outstanding non-material depreciation (*i.e.*, non-material depreciation that was withheld from the Class Member's ACV payment(s) and was not later paid to the Class Member in the form of replacement cost benefits), subject to applicable deductibles and limits ("Principal Payment");

    ii.    **Group 2 (Interest Only):** Class Members with no outstanding non-material depreciation (*i.e.*, Class Members who were paid all previously withheld non-material depreciation prior to the date of this Agreement) will receive a single interest award ("Interest Payment") of $25.

    iii.    The foregoing Principal Payments to Group 1 Class Members will be reduced, pro rata, by the Group 2 Class Members' Interest Payments, Settlement Costs, and Fees. The term "Settlement Costs and Fees" is hereby defined as the sum of the following: (1) attorneys' fees and costs, expenses and notice administration; and (2) service awards to the Representative Plaintiffs. The reduction will be proportional to the individual Class Member's award.

    iv.    Defendant shall be responsible for (i) correctly determining the amount of outstanding non-material depreciation for the Settlement Class and (ii) the cost of distributing payments to Class Members. Further, Defendant shall

14

identify those members of the Settlement Class that would be entitled to an interest award.

v.     In the event any check issued pursuant to this Agreement is returned, Defendant will follow its standard escheatment procedures for locating policyholders, which results in the submission of the funds to the State of Tennessee in the event a policyholder cannot be located.

e.     As of the date of the execution of this Agreement, Defendant will cease using the Xactimate depreciation option settings "Depreciate Non-Material" and "Depreciate Overhead and Profit" in the State of Tennessee for any claims arising under any policy that does not expressly state that "labor" may be subject to depreciation.[3]

## THE RELEASES AND COVENANTS NOT TO SUE

14.     On the Effective Date of this Settlement Agreement, the Representative Plaintiffs and all members of the Settlement Class, who have not timely and properly excluded themselves from the Settlement Class, and their respective current and former assigns, heirs, successors, executors, trustees, agents, personal and representatives, subsidiaries, affiliates, officers, members, directors, and employees (the "Releasing Parties") fully and forever release, acquit, discharge, and covenant not to sue Defendant and its current and former parents, owners, affiliates, subsidiaries, divisions, predecessors, successors, assigns, officers, members, directors, employees, agents,

---

[3] Auto-Owners makes this commitment as a contractual obligation to the Representative Plaintiffs and Settlement Class. This commitment and the Final Approval Order shall not be construed as an injunction. If the Tennessee Supreme Court or the Tennessee legislature overrules or abrogates the decision in *Lammert v. Auto-Owners Mutual Insurance Company*, 572 S.W.3d 170 (Tenn. 2019), or if a Tennessee Appellate Court or the Sixth Circuit Court of Appeals holds that GCO&P is not "labor" in the meaning of *Lammert*, the Parties agree that Auto-Owners may depreciate non-materials costs, including GCO&P, if and to the extent permitted by such legislation or judicial opinion. Auto-Owners will provide notice to Class Counsel in advance of changing its practices under this provision.

principals, insurers, and legal representatives (the "Released Entities") from and on any and all claims, judgments, causes of action, demands, suits, whether class, representative, individual or otherwise in nature, damages whenever incurred, liabilities of any nature whatsoever, including damages, punitive damages, costs, expenses, penalties, interest, equitable relief, and attorneys' fees, known or unknown, contingent or accrued, suspected or unsuspected, asserted or unasserted, in law or equity, statutory or common law, that any Releasing Party, whether directly, representatively, derivatively, or in any other capacity, ever had, now has, or hereafter can, shall, or may have against the Released Entities that relate in any fashion to the amount of the Releasing Parties' withholding of non-materials costs as depreciation from ACV payments (the "Released Claims"). This release does not include within its scope any future, current or ongoing individual claims disputes between the Class Members and the Defendant wholly unrelated to the issue of non-material depreciation, such as, *e.g.*, a claim seeking replacement cost benefits, a dispute concerning coverage, or a dispute concerning the amount of the actual cash value of a particular loss regarding matters unrelated to the alleged systematic practice of depreciating non-materials through claims-estimating software.[4] Claims disputes wholly unrelated to the subject matter of this lawsuit will continue to be handled by the Defendant in its ordinary course. The Released Claims do not include any claims or causes of actions arising out of insurance policies issued by entities other than the Defendant.

---

[4] The parties agree that the scope of this litigation has always been limited to Auto-Owners' practice of withholding of non-materials costs (as defined herein) from ACV payments , and that claims related to any other alleged deficiencies in Auto-Owners' ACV payments were not tolled by the pendency of this putative class action. Auto-Owners' agreement to the narrow release defined above is conditioned upon the inclusion of agreeable language in the proposed Final Approval Order that makes clear that, although Class Members do not waive any claims that are unrelated to the withholding of non-materials depreciation, Class Members who elect to remain in the Class do waive any argument that the limitations periods applicable to unreleased claims (including contractual limitations periods) were tolled by this litigation.

## **TERMINATION**

15.     This Agreement shall terminate and become null and void upon the occurrence of any of the following events:

      a.     The District Court refuses to certify the Settlement Class;

      b.     The District Court denies preliminary approval of this Agreement;

      c.     The District Court denies final approval of this Agreement;

      d.     Certification of the Settlement Class and/or approval of this Agreement is reversed on appeal;

      e.     The Effective Date does not occur for any other reason; or

      f.     If 200 or more potential Settlement Class Members opt out of the Settlement Class, Defendant may at its option elect to withdraw from and void this Agreement, provided that Defendant must exercise this option within fourteen (14) days of the opt-out deadline.

16.     If this Agreement should terminate or become null and void for any reasons, then:

      a.     This Agreement and all negotiations and proceedings and releases relating thereto shall be without prejudice as to the rights of any and all Parties to this Agreement, and Parties to this Agreement shall be restored to their respective positions as if this Agreement were never executed;

      b.     The Parties shall jointly move that any order entered pursuant to this Agreement be vacated and all findings withdrawn.

## **IDENTIFICATION OF CLASS MEMBERS, AUDIT SAMPLE, COMPLIANCE CERTIFICATION AND NEUTRAL EVALUATOR**

17.     Defendant shall determine which policyholders are reasonably likely to be Settlement Class Members using the claims data it maintains in the ordinary course and additional

17

data from XactAnalysis, along with any claim file review it completes in the process of identifying potential Settlement Class Members. To the extent a claim does not appear in the XactAnalysis data, Auto-Owners will conduct claim file review of the following structural damage claims in Tennessee during the Class Period: (a) claims involving an ACV payment, as indicated in Auto-Owners' claims data; (b) claims involving an independent adjuster, as indicated in Auto-Owners' claims data; and (c) claims involving no ACV or replacement cost payments, but for which Auto-Owners' data indicates a recoverable depreciation payment.

18.     While Defendant will be responsible for determining the Settlement Class Payments, the Parties agree that Class Counsel will have the right, prior to payment, to audit 2.5% of the claims, obtained by random sample of an agreed upon parameter, to verify the efficacy and accuracy of the Defendant's processes for calculating Settlement Class Payments. The parties anticipate that the sample will be drawn and produced approximately two weeks before the final fairness hearing. If any abnormalities are discovered, the parties will meet and confer to determine how to proceed. At this time, the Parties contemplate providing claims information and .ESX files for the audit process.

19.     Prior to the issuance of payments, Defendant will provide Class Counsel with a list of the Group 1 Settlement Class Members with the following additional information: (1) proposed Principal Payments; and (2) proposed pro rata reduction and calculations of the same. Defendant will also provide Class Counsel with a list of the Group 2 Settlement Class Members.

20.     Prior to the issuance of payments, Defendant will further provide Class Counsel with a declaration, executed by a management-level employee or officer with personal knowledge of the terms of this Agreement and the efforts made by Auto-Owners to comply with this Agreement, attesting that Defendant has made a full, complete and good faith effort to comply

with the terms of this Settlement Agreement when trying to calculate the Settlement Class Member amounts it owes hereunder, and that Auto-Owners has no reason to believe that any Settlement Class Member failed to be included or will fail to receive what the policyholder should be paid under the terms of this Agreement.

## UNAVAILABILITY OF .ESX OR CLAIMS DATA

21. The Parties understand that it is possible that .ESX files, or other data necessary to determine the precise amount of non-material depreciation withheld, may not be available for all Settlement Class Members.

22. In the event that Auto-Owners determines that an .ESX file is not available but a printed estimate is available, the parties agree that Auto-Owners may use its company-wide ratio of non-material depreciation to total depreciation in lieu of recalculating withholdings through Xactimate. The parties agree that this percentage is 50%.

## <u>MISCELLANEOUS</u>

23. <u>Parties Authorized to Enter into Settlement Agreement.</u> The Representative Plaintiffs, Class Counsel and Defendant each represent and warrant that he, she or it is fully authorized to enter into this Settlement Agreement and to carry out the obligations provided for herein. Each person executing this Settlement Agreement on behalf of a Party covenants, warrants and represents that she or he is and has been fully authorized to do so by such Party. Each party hereto further represents and warrants that he, she or it intends to be bound fully by the terms of this Settlement Agreement.

24. <u>No Attempt by Parties to Object.</u> The Representative Plaintiffs, Class Counsel, and Defendant represent and warrant that they have not, nor will they solicit, encourage or assist in any fashion any effort by any natural or legal person to object to the settlement under this Settlement Agreement.

19

25.     Signatures.    The Parties and their counsel may sign separate copies of this Settlement Agreement, which together will constitute one agreement.  Each person executing this Settlement Agreement warrants that such person has the full authority to do so.  In addition, signature by facsimile will constitute sufficient execution of this Settlement Agreement.

26.     Best Efforts.  Each Party agrees that the terms of the Settlement Agreement reflect a good-faith settlement.  The Representative Plaintiffs, Class Counsel, and Defendant consider the settlement to be fair and reasonable and will use their best efforts to seek approval of the Settlement Agreement by the Court.

27.     Time Periods.  The time periods and dates described in this Settlement Agreement with respect to the giving of notices and hearings are subject to Court approval and modification by the Court or by written stipulation of the Class Counsel and Defendant's counsel of record.

28.     Governing Law.  This Settlement Agreement is intended to and shall be governed by the laws of the State of Tennessee.  All disputes arising hereunder or relating hereto shall be subject to the exclusive jurisdiction of the Court in which the Lawsuit was pending at the time of execution of this Settlement Agreement.

29.     No Construction Against Drafter.  This Settlement Agreement shall be deemed to have been drafted by the Parties, and any rule that a document shall be interpreted against the drafter shall not apply to this Settlement Agreement.

30.     Agreement Binding on Successors in Interest.  This Settlement Agreement shall be binding on and inure to the benefit of each Party's respective heirs, successors and assigns.

31.     Execution by Counterpart.    This Agreement shall become effective upon its execution by counsel for each Party.  The Parties may execute this Agreement in counterparts.

20

Each counterpart shall be deemed to be an original, and execution of counterparts shall have the same force and effect as if all Parties had signed the same instrument.

*[Signature Pages Follow]*

_Gregory Lammert_

_Jamie Lammert_

_Susan Reasons_

Auto-Owners Insurance Company

By: _____

    Name: _____

Its: _____

    Title: _____

**APPROVED AS TO FORM:**

J. Brandon McWherter
Gilbert Russell McWherter
Scott Bobbitt, PLC
341 Cool Springs Boulevard
Suite 230
Franklin, Tennessee 37067
bmcwherter@gilbertfirm.com

STINSON LLP
Todd A. Noteboom (admitted pro hac vice)
Peter J. Schwingler (admitted pro hac vice)
50 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Telephone: 612-335-1894
todd.noteboom@stinson.com
peter.schwingler@stinson.com

T. Joseph Snodgrass
Larson King, LLP
30 East Seventh Street
Suite 2800
St. Paul, Minnesota 55101
jsnodgrass@larsonking.com

John S. Hicks, TN BPR No. 10478
Baker, Donelson, Bearman, Caldwell &
Berkowitz, P.C.
211 Commerce Street, Suite 800
Nashville, Tennessee 37201
(615) 726-7337
jhicks@bakerdonelson.com

**_Attorneys for Gregory Lammert, Jamie Lammert and Susan Reasons_**

**_Attorneys for Defendant_**

_[Signature Pages to Settlement Agreement]_

Auto-Owners Insurance Company

_____

Gregory Lammert

By: _____
     Name:

Its: _____
     Title:

_____

Jamie Lammert

_____

Susan Reasons

**APPROVED AS TO FORM:**

_____

J. Brandon McWherter
~~Gilbert Russell~~ McWherter
Scott Bobbitt, PLC
341 Cool Springs Boulevard
Suite 230
Franklin, Tennessee 37067
bmcwherter@gilbertfirm.com

_____

STINSON LLP
Todd A. Noteboom (admitted pro hac vice)
Peter J. Schwingler (admitted pro hac vice)
50 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Telephone: 612-335-1894
todd.noteboom@stinson.com
peter.schwingler@stinson.com

_____

T. Joseph Snodgrass (admitted pro hac vice)
Larson King, LLP
30 East Seventh Street
Suite 2800
St. Paul, Minnesota 55101
jsnodgrass@larsonking.com

_____

John S. Hicks, TN BPR No. 10478
Baker, Donelson, Bearman, Caldwell &
Berkowitz, P.C.
211 Commerce Street, Suite 800
Nashville, Tennessee 37201
(615) 726-7337
jhicks@bakerdonelson.com

*Attorneys for Gregory Lammert, Jamie
Lammert and Susan Reasons*

*Attorneys for Defendant*

Auto-Owners Insurance Company

By: _____

Name: Chris Poe

Its: _Assistant Vice President Claims_

Title: Assistant Vice President

_____
Gregory Lammert

_____
Jamie Lammert

_____
Susan Reasons

**APPROVED AS TO FORM:**

_____
J. Brandon McWherter
Gilbert Russell McWherter
Scott Bobbitt, PLC
341 Cool Springs Boulevard
Suite 230
Franklin, Tennessee 37067
bmcwherter@gilbertfirm.com

_____
STINSON LLP
Todd A. Noteboom (admitted pro hac vice)
Peter J. Schwingler (admitted pro hac vice)
50 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Telephone: 612-335-1894
todd.noteboom@stinson.com
peter.schwingler@stinson.com

_____
T. Joseph Snodgrass (admitted pro hac vice)
Larson King, LLP
30 East Seventh Street
Suite 2800
St. Paul, Minnesota 55101
jsnodgrass@larsonking.com

_____
John S. Hicks, TN BPR No. 10478
Baker, Donelson, Bearman, Caldwell &
Berkowitz, P.C.
211 Commerce Street, Suite 800
Nashville, Tennessee 37201
(615) 726-7337
jhicks@bakerdonelson.com

**_Attorneys for Gregory Lammert, Jamie Lammert and Susan Reasons_**

**_Attorneys for Defendant_**

_[Signature Pages to Settlement Agreement]_

Auto-Owners Insurance Company

By: _____
_____
Gregory Lammert
Name: _____

Its: _____

Title: _____

_____
Jamie Lammert

_____
Susan Reasons

**APPROVED AS TO FORM:**

_____
J. Brandon McWherter
Gilbert Russell McWherter
Scott Bobbitt, PLC
341 Cool Springs Boulevard
Suite 230
Franklin, Tennessee 37067
bmcwherter@gilbertfirm.com

_____
STINSON LLP
Todd A. Noteboom (admitted pro hac vice)
Peter J. Schwingler (admitted pro hac vice)
50 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Telephone: 612-335-1894
todd.noteboom@stinson.com
peter.schwingler@stinson.com

_____
T. Joseph Snodgrass (admitted pro hac vice)
Larson King, LLP
30 East Seventh Street
Suite 2800
St. Paul, Minnesota 55101
jsnodgrass@larsonking.com

_____
John S. Hicks, TN BPR No. 10478
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
211 Commerce Street, Suite 800
Nashville, Tennessee 37201
(615) 726-7337
jhicks@bakerdonelson.com

***Attorneys for Gregory Lammert, Jamie Lammert and Susan Reasons***

***Attorneys for Defendant***

*[Signature Pages to Settlement Agreement]*

Auto-Owners Insurance Company

_____

Gregory Lammert

By: _____
    Name:

Its: _____
    Title:

_____

Jamie Lammert

_____

Susan Reasons

**APPROVED AS TO FORM:**

_____

J. Brandon McWherter
Gilbert Russell McWherter
Scott Bobbitt, PLC
341 Cool Springs Boulevard
Suite 230
Franklin, Tennessee 37067
bmcwherter@gilbertfirm.com

_____

T. Joseph Snodgrass (admitted pro hac vice)
Larson King, LLP
30 East Seventh Street
Suite 2800
St. Paul, Minnesota 55101
jsnodgrass@larsonking.com

**Attorneys for Gregory Lammert, Jamie Lammert and Susan Reasons**

STINSON LLP
Todd A. Noteboom (admitted pro hac vice)
Peter J. Schwingler (admitted pro hac vice)
50 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Telephone: 612-335-1894
todd.noteboom@stinson.com
peter.schwingler@stinson.com

_____

John S. Hicks, TN BPR No. 10478
Baker, Donelson, Bearman, Caldwell &
Berkowitz, P.C.
211 Commerce Street, Suite 800
Nashville, Tennessee 37201
(615) 726-7337
jhicks@bakerdonelson.com

**Attorneys for Defendant**